# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>December 13, 2018</u>

**No. A-1-CA-35000**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**LAVERLE J. DEANS,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Cindy M. Mercer, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ATTREP, Judge.**

{1}     Defendant Laverle Deans appeals from the denial of his motion to dismiss on speedy trial grounds after conditionally pleading guilty to one count of possession of child pornography, contrary to NMSA 1978, Section 30-6A-3(A) (2007, amended 2016). The alleged violation of Defendant's right to a speedy trial arises in a unique context. During the pendency of Defendant's case, the New Mexico Supreme Court determined that multiple counts of possession of child pornography (like those in Defendant's indictment) could only be charged as one count. *See State v. Olsson*, 2014-NMSC-012, 324 P.3d 1230. Consequently, the district court merged the twenty counts of possession of child pornography Defendant faced into one count, dramatically reducing Defendant's exposure from thirty years of incarceration to eighteen months of incarceration. Because we determine that Defendant's right to a speedy trial was not violated, we affirm the district court.

**BACKGROUND**

{2}     For simplicity, we outline the pertinent timeline here based on the testimony presented at the hearing on Defendant's speedy trial motion, as well as the record and available hearing transcripts. The only testimony offered at the speedy trial hearing was that of Anne Keener, former assistant district attorney who was the

prosecutor on the case for most relevant time periods. More details will be included in our discussion as needed.

**Time Line of Events**

{3}    March 7, 2012: Defendant arrested and charged with possession of child pornography.

March 29, 2012: Defendant indicted on twenty identical counts of possession of child pornography based on his alleged possession of twenty photographs, retrieved by law enforcement from his computer.

April 11, 2012: Defendant arraigned and held in custody on cash bond.

May 29, 2012: First judge reassignment.

July 20, 2012: Defense counsel, Peter Ortega, entered an appearance and pro forma demand for speedy trial.

December 19, 2012: Pretrial conference held for trial set in January 2013, at which the State requested a continuance. Although it was not on the record, Ms. Keener testified that defense counsel stipulated to the continuance. The State represented that the case was not ready for trial and plea negotiations were ongoing. The State further represented that if a plea agreement was not reached, then a superseding indictment with 900 additional counts of possession of child pornography would be filed. The State requested a plea status in thirty days to see if the case could be resolved. The district court took the case off the trial docket and set a hearing for January 30, 2013.

January 8, 2013: Defendant filed a pro se motion to dismiss his attorney, Mr. Ortega. Defendant complained that he had not yet been provided discovery, and that substitute counsel, not Mr. Ortega, was present at the pretrial conference. Mr. Ortega filed a motion to withdraw on January 30, 2013.

January 30, 2013: No transcript of this hearing exists in the record. Ms. Keener testified that, at this hearing, the district court denied Defendant's motion to dismiss his attorney and counsel informed the court that plea negotiations were still ongoing.

July 24, 2013: The State sent a written plea offer to defense counsel.

October 23, 2013: Defendant filed his second pro se motion to dismiss his attorney, Mr. Ortega. Defendant complained that Mr. Ortega was not ready for trial and had not hired an investigator. Defendant further stated that Mr. Ortega had used "unsavory tactics" to attempt to persuade him to accept a plea, did not want to represent Defendant unless he accepted the plea, and did not have Defendant's best interests in mind.

December 9, 2013: Mr. Ortega filed his second motion to withdraw, stating, inter alia, that Defendant "refuses to heed" his advice.

December 11, 2013: Defense counsel filed a one-page motion to dismiss for lack of a speedy trial.

December 31, 2013: Ms. Keener and Mr. Ortega met with Defendant at jail to go over the plea offer. The plea agreement called for Defendant to plead guilty to all twenty counts, leaving a sentence of zero to thirty years of incarceration up to the judge; in return, the State would not pursue the additional counts. According to Ms. Keener, Defendant did not reject the plea offer but requested additional time to consider it.

January 6, 2014: The district court held a very brief hearing and permitted Mr. Ortega to withdraw as counsel. The judge did not mention or rule on the pending speedy trial motion and did not set the case for trial.

January 22, 2014: Defense counsel, Gregory Gaudette, entered an appearance and pro forma demand for speedy trial.

3

April 21, 2014: The New Mexico Supreme Court decided *Olsson*, 2014-NMSC-012, in which it held that the state cannot charge multiple counts of possession of child pornography under Section 30-6A-3(A) based solely on the possession of multiple images. *Id.* ¶¶ 1-2, 47.

June 13, 2014: Defense counsel filed a motion to merge the twenty counts into one count, pursuant to *Olsson*, 2014-NMSC-012, which later was granted, and a motion to reconsider conditions of release, asserting that Defendant had already served the maximum sentence.

June 24, 2014: Defense counsel filed a second motion to dismiss for violation of Defendant's right to speedy trial.

June 30, 2014: The district court held a hearing and apparently addressed the motion to merge counts and motion to reconsider conditions of release, although we do not have a transcript of this hearing.

July 3, 2014: The district court signed an order releasing Defendant from custody.

August 1, 2014: Second judge reassignment.

August 4, 2014: The State filed its response to Defendant's speedy trial motion. The district court may have held a hearing on this date, but there is no transcript of this hearing in the record.

September 8, 2014: The State filed an amended response to Defendant's speedy trial motion. The district court held a hearing on Defendant's speedy trial motion and denied the motion.

{4}     After the denial of his speedy trial motion, Defendant's case was set to go to trial on October 14, 2014. Prior to trial, Defendant pleaded guilty to one count of possession of child pornography, contrary to Section 30-6A-3(A), and reserved the right to appeal the denial of his speedy trial motion. Defendant was later sentenced

4

to eighteen months incarceration, the maximum term of imprisonment at the time, and received credit for time served. This appeal followed.

**DISCUSSION**

{5}    "The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution."[1] *Spearman*, 2012-NMSC-023, ¶ 16. In determining whether a defendant has been deprived of the right to a speedy trial, we analyze the four factors set out by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay in bringing the case to trial, (2) the reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) the prejudice to the defendant caused by the delay." *State v. Serros*, 2016-NMSC-008, ¶ 5, 366 P.3d 1121. "We weigh these factors according to the unique circumstances of each case in light of the [s]tate and the defendant's conduct and the harm to the defendant from the delay." *Id.* (internal quotation marks and citation omitted). "On appeal, we give deference to the district court's factual findings, but we review the weighing and the balancing of the *Barker* factors de novo." *State v. Collier*, 2013-

---

[1] Because Defendant does not assert that New Mexico's speedy trial guarantee should be interpreted any differently than the Sixth Amendment's guarantee, and our courts have not done so in the past, we treat both protections as the same here. *State v. Spearman*, 2012-NMSC-023, ¶ 16 n.1, 283 P.3d 272.

NMSC-015, ¶ 39, 301 P.3d 370 (alterations, internal quotation marks, and citation omitted).

**Length of Delay**

{6}    "The first factor, length of delay, is both the threshold question in the speedy trial analysis and a factor to be weighed with the other three *Barker* factors." *State v. Ochoa*, 2017-NMSC-031, ¶ 12, 406 P.3d 505. In *State v. Garza*, 2009-NMSC-038, 146 N.M. 499, 212 P.3d 387, our Supreme Court adopted guidelines establishing the reasonable timeframe in which criminal cases should be brought to trial based on their respective complexity—twelve months for a simple case, fifteen months for an intermediate case, and eighteen months for a complex case. *Id.* ¶ 2. If the total time of delay exceeds the applicable guideline, the full analysis of the *Barker* factors is triggered, and this factor weighs in favor of the defendant. *See Garza*, 2009-NMSC-038, ¶ 21; *Serros*, 2016-NMSC-008, ¶ 26. The weight we assign this factor is proportional to the length of the delay—"[a]s the delay lengthens, it weighs increasingly in favor of the accused." *Ochoa*, 2017-NMSC-031, ¶ 14.

{7}    Because the district court below did not make a determination on the issue of complexity, we are free to make this determination. *See State v. O'Neal*, 2009-NMCA-020, ¶ 16, 145 N.M. 604, 203 P.3d 135; *see also State v. Coffin*, 1999-NMSC-038, ¶ 57, 128 N.M. 192, 991 P.2d 477 (determining complexity of case in

6

the absence of relevant trial court findings). Factors bearing on the complexity of the case include the number and complexity of the charges, the number of witnesses, and whether expert testimony is necessary. *See, e.g.*, *State v. Montoya*, 2011-NMCA-074, ¶ 16, 150 N.M. 415, 259 P.3d 820 (comparing simple cases, which "require less investigation and tend to involve primarily police officer testimony," with intermediate cases, which tend to "involve numerous or relatively difficult criminal charges and evidentiary issues, numerous witnesses, expert testimony, and scientific evidence" (internal quotation marks and citation omitted)); *State v. Laney*, 2003-NMCA-144, ¶ 14, 134 N.M. 648, 81 P.3d 591 (noting that cases of intermediate complexity are characterized by numerous witnesses, expert testimony, and scientific evidence).

**{8}** The number of counts Defendant initially faced is not a helpful metric in this case as the counts eventually merged. Likewise, in the absence of any explanation from the State whether the listed witnesses would be called at trial, the State's supplemental witness list, which was filed prior to the merger of the counts and listed some thirty-three witnesses, is of little assistance in our analysis. Ms. Keener, however, did testify that proof at trial would require calling multiple witnesses with expertise pertaining to the extraction of data from Defendant's computer. There also was a fairly large volume of discovery from the State in this case (342 pages and two CDs). And Ms. Keener discussed the difficulty and

lengthiness of jury selection in child pornography cases. Given the foregoing, and without the benefit of the district court's determination of complexity, we find this case to be of intermediate complexity. *See Montoya*, 2011-NMCA-074, ¶ 16 (concluding that a case involving four somewhat difficult charges and nine witnesses, including two experts, was of intermediate complexity); *State v. Tortolito*, 1997-NMCA-128, ¶¶ 3, 7, 124 N.M. 368, 950 P.2d 811 (upholding the district court's finding that a case involving three separate charges fell into the "high end of the intermediately complex range," in part, because the case required scientific investigation and DNA analysis (internal quotation marks omitted)). Thus, the presumptive period for this "intermediate" case to be brought to trial is fifteen months. *Garza*, 2009-NMSC-038, ¶ 2.

{9}     The delay in this case stretched for thirty months, from Defendant's arrest on March 7, 2012, until the hearing on Defendant's speedy trial motion on September 8, 2014. A delay of thirty months is twice the presumptive period and weighs heavily against the State. *See State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing the length of delay, which was approximately twice as long as the presumptively prejudicial delay, heavily against the state); *State v. Vigil-Giron*, 2014-NMCA-069, ¶¶ 19, 65, 327 P.3d 1129 (same).

**Reasons for the Delay**

**{10}** The second *Barker* factor evaluates the reasons for each period of delay and assigns responsibility for each period accordingly. *See Barker*, 407 U.S. at 531. "Our courts have recognized three types of delay that may be attributable to the state and one type attributable to the defense." *State v. Brown*, 2017-NMCA-046, ¶ 18, 396 P.3d 171. First, intentional delay, which is "a deliberate attempt to delay prosecution of the case in order to hamper the defense[,]" weighs heavily against the state. *Id.* The second type of delay is negligent or administrative, which also weighs against the state because "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun[,]" but it does so more lightly than intentional delay. *Id.* (internal quotation marks and citation omitted). "[A]s the length of the delay increases, this type of delay begins to weigh more heavily against the state." *Id.* Third is delay caused by valid reasons, which "are neutral and do not weigh against the state." *Id*. Finally, any delay caused by the defendant generally weighs against the defendant. *Id.*

**{11}** The district court did not undertake an evaluation of the specific periods of delay, and the record in this case is not as clear as it could be in terms of the reasons for various delays. We, thus, evaluate the periods of delay within the constraints of the record before us.

**A.      Ten-Month Period From Arrest Until Defendant's First Motion to Dismiss Counsel**

9

{12} Save for two brief periods of time, Defendant and the State agree that this case proceeded normally from the date of Defendant's arrest on March 7, 2012, until Defendant filed his first motion to dismiss counsel on January 8, 2013. Defendant first points to the fact that he was arrested on March 7, 2012, but he was not indicted until March 29, 2012. Defendant appears to have been arrested on a magistrate court warrant and therefore was entitled to have a preliminary hearing on or before March 21, 2012. *See* Rule 6-202(A)(1) NMRA; Rule 6-104(A)(2) NMRA. The State, however, obtained an enlargement of time from the magistrate court for good cause shown until March 29, 2012, pursuant to the rules. *See* Rule 6-202(A)(2). The eight-day delay in having a probable cause determination in this case was negligible, was justified by the State before the magistrate court, and will not be held against the State here. Defendant next points to the fact that the case was reassigned to a different judge on May 29, 2012. Defendant does not argue that this reassignment actually caused any delay, nor is it apparent from the record that it did. As such, we do not weigh this period against either party. *See State v. Parrish*, 2011-NMCA-033, ¶ 25, 149 N.M. 506, 252 P.3d 730 (determining that, during the period of time when judges were reassigned, the case progressed with customary promptness and so the time period would weigh neutrally). The parties agree that the remainder of this ten-month period proceeded normally, and we weigh this entire period neutrally. *See State v. Maddox*, 2008-NMSC-062, ¶ 27,

10

145 N.M 242, 195 P.3d 1254 (weighing period neutrally where "the case moved toward trial with customary promptness"), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48.

**B.      Twelve-Month Period for Plea Negotiations**

{13}      The period from January 2013 until January 2014 was marked in large part by plea negotiations. The Supreme Court in *Maddox* explained that "[g]enerally, there is no rule attributing delay resulting from attempted plea negotiations to a specific party and absent some act of bad faith or some prejudice to the defendant, plea negotiations are themselves not a factor to be held against either party." 2008-NMSC-062, ¶ 24 (internal quotation marks and citation omitted). The Court went on to note, however, that "[b]ecause the [s]tate has the burden of bringing a case to trial, we will weigh unreasonable periods of delay against the [s]tate." *Id.* ¶ 26. Likewise, the Court noted that the time a defendant fails to timely respond to plea offers will weigh only slightly against the state. *Id.* This Court has "read *Maddox* to require the delay from plea negotiations to be weighed against the [s]tate when there exist measurable periods of negotiation." *State v. Wilson*, 2010-NMCA-018, ¶ 33, 147 N.M. 706, 228 P.3d 490. "How heavily the delay is to be weighed depends on the length of that delay and the amount of delay caused by a defendant in failing to timely respond to a plea offer." *Id.*

**{14}** In this case, the parties were in plea negotiations for a period of approximately one year from January 2013 to January 2014. Upon the State's request at the pretrial conference in December 2012, the trial in January 2013 was vacated, and it does not appear that the trial was reset until after the denial of Defendant's speedy trial motion. During the December 2012 pretrial conference, the State explained that the parties were in plea negotiations and that the case was not ready to go to trial in January. Further, if plea negotiations were not successful, the State planned to add 900 counts through a superseding indictment. Ms. Keener testified that defense counsel was in agreement with the requested continuance. A status hearing then was held in late January 2013, at which it again was represented that the parties were in plea negotiations. In July 2013, the State sent defense counsel a written plea agreement. In December 2013, Ms. Keener, along with defense counsel, personally met with Defendant at the jail to go over the plea and the fact that a superseding indictment would be filed if an agreement was not reached. Additionally, sometime during this period, Ms. Keener met with Defendant's family about the plea, and they expressed that they did not want the State to pursue additional charges.

**{15}** During this entire one-year period in which plea discussions were ongoing, Ms. Keener testified that defense repeatedly asked for additional time to consider the plea offer and Defendant apparently did not reject the plea. Defendant,

12

however, expressed his dissatisfaction with his attorney in two pro se motions to dismiss counsel and specifically described his displeasure with his attorney's "unsavory tactics" in attempting to persuade him to take a plea. During the December 2013 meeting with Ms. Keener, Defendant, nevertheless, personally requested additional time from the State to consider the plea offer and to postpone the State's pursuit of a superseding indictment.

{16}    While the State represented that it continued to leave the plea offer open at the request of the defense and for Defendant's benefit, the State still was under a duty to "affirmatively seek to move the case to trial, even while plea negotiations [were] pending." *Maddox*, 2008-NMSC-062, ¶ 26. One year is simply "too long a delay to reasonably attribute solely to awaiting a response to [a plea] offer." *Id.* Given the protracted period of time in which the parties attempted to negotiate a plea to no avail, we weigh this time against the State. *See Wilson*, 2010-NMCA-018, ¶ 33. However, given that Defendant played a role in extending out the plea negotiation process by requesting that the plea offer remain open and the State not move forward with a superseding indictment, we weigh this period of time only slightly against the State. *See State v. Samora*, 2016-NMSC-031, ¶ 13, 387 P.3d 230 (weighing nineteen month period consisting predominately of plea negotiations slightly against the state); *Brown*, 2017-NMCA-046, ¶ 22 (weighing eleven months of delay resulting from plea negotiations slightly against the state).

13

**C.**     **Five and One-Half-Month Period From the Withdrawal of Defense Counsel Until the Filing of the Speedy Trial Motion**

{17}     We next examine the approximately five and one-half-month period of time from when Mr. Ortega was permitted to withdraw as defense counsel (January 6, 2014) until Defendant filed his second motion to dismiss on speedy trial grounds (June 24, 2014). The State argues that the bulk of this time period should be weighed against Defendant because it was time necessary for his newly appointed counsel, Greg Gaudette, to become familiar with the case and discuss the plea offer with Defendant. Without citing to any authority, Defendant argues that this period of time should be weighed neutrally. In support of the State's position, Ms. Keener testified that, after Mr. Gaudette entered his appearance, he needed additional time to review the discovery and requested that the State not file a superseding indictment and not withdraw the plea offer. "[D]elays sought or caused by defense counsel are ordinarily attributed to the defendant[.]" *State v. Fierro*, 2012-NMCA-054, ¶ 40, 278 P.3d 541 (citing *Vermont v. Brillon*, 556 U.S. 81, 89-94 (2009)); *see also State v. Steinmetz*, 2014-NMCA-070, ¶¶ 14-15, 327 P.3d 1145 (concluding that delay caused by defense counsel should weigh against the defendant). Only in reply does Defendant argue that the rationale in *Serros*, in which our Supreme Court carved out a limited exception to this general rule, should apply. 2016-NMSC-008, ¶¶ 35-43, 47.

14

{18}     In *Serros*, the Court looked critically at delays a defendant traditionally would be held accountable for—e.g., stipulated continuances and removing defense counsel. *Id.* ¶¶ 44-67. Instead of holding the defendant accountable for these delays, the Court accepted the defendant's uncontroverted testimony about his attorneys' neglect, which precipitated the delays. *See, e.g.*, *id.* ¶¶ 46, 49-50, 54-56, 58-60, 62. Less than two years later, however, our Supreme Court made clear that the reach of the *Serros* exception is very limited. *See State v. Castro*, 2017-NMSC-027, ¶¶ 12-14, 402 P.3d 688. The Court limited *Serros* to situations where a defendant suffers extreme prejudice and is effectively blameless in the delay. *Castro*, 2017-NMSC-027, ¶¶ 12-14. In this case, Defendant personally requested additional time to consider the plea offer and postpone a superseding indictment and trial, and, as discussed below, Defendant on balance did not suffer prejudice. As such, this is not the type of case in which the *Serros* exception applies and we decline to apply it here. *Id.* ¶ 14 ("This is not an extreme case where the prejudice is palpable, and it is necessary to consider attorney neglect when analyzing whether the right to a speedy trial was violated. Therefore, the . . . *Serros* analysis does not apply."). Instead, we apply the general rule that delays caused by defense counsel are attributable to the defendant. *See Steinmetz*, 2014-NMCA-070, ¶¶ 14-15; *Fierro*, 2012-NMCA-054, ¶ 40. As such, we weigh this approximately five and one-half-month period against Defendant.

15

**D. Two and One-Half-Month Period From the Filing of the Speedy Trial Motion Until the Hearing on the Motion**

{19} Defendant finally argues that the approximately two and one-half-month period of time between the filing of his motion to dismiss on speedy trial grounds (June 24, 2014) and the hearing on the motion (September 8, 2014) should weigh against the State because the State failed to timely respond to the motion. The day after the speedy trial motion was filed, the district court set a hearing on the motion for August 4, 2014. The State's response to Defendant's motion was due on July 14, 2014; but the State did not file its response until the day of the scheduled hearing, which was three weeks late. *See* Rule 5-120(E) NMRA; Rule 5-104(C) NMRA. A judge reassignment occurred on August 1, 2014, and it is unclear from the record whether the hearing set for August 4, 2014, actually was held, and there is no record of this hearing on appeal. The district court apparently continued the hearing to September 8, 2014, the same date the State filed an amended response to Defendant's speedy trial motion.

{20} This final two and one-half-month period of delay was not discussed by the parties before the district court; and the record is devoid as to why the district court permitted the late filing of the State's response or why the court continued the speedy trial hearing. The continuance could have been a result of the State's late response or the judge reassignment, or it could have been a result of a stipulated continuance or some other normal delay. Without any record to make this

16

determination, we will not speculate that this delay should be attributable to the State. *See State v. Sandoval*, 1966-NMSC-143, ¶ 6, 76 N.M. 570, 417 P.2d 56 (refusing to speculate on an issue when it was not presented to the district court and the record was "wholly silent on the point"); *State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 ("It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal. If he does not, all inferences will be resolved in favor of the trial court's ruling." (citation omitted)). As such, we weigh this two and one-half-month period neutrally.

**Assertion of the Right**

{21} The third *Barker* factor analyzes the degree to which the defendant has asserted his right to a speedy trial. 407 U.S. at 531-32. "Under this factor we accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Samora*, 2016-NMSC-031, ¶ 19 (alteration, internal quotation marks, and citation omitted). "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection[.]" *Garza*, 2009-NMSC-038, ¶ 32.

{22} In this case, the district court weighed this factor neutrally. In conjunction with defense counsel's two entries of appearance, each filed a pro forma demand for speedy trial. "Pro forma assertions are sufficient to assert the right, but are given little weight in a defendant's favor." *Ochoa*, 2017-NMSC-031, ¶ 41. In addition, on December 11, 2013, defense counsel filed a one-page speedy trial motion. This three-sentence motion contained no argument and did not in any way explain how Defendant's right to speedy trial had been violated. And just weeks after this motion was filed, Defendant personally requested additional time to consider the State's plea offer and postpose the filing of a superseding indictment and subsequent trial on the same. Defendant's action diluted his speedy trial assertion. *See Samora*, 2016-NMSC-031, ¶ 20 ("[The d]efendant's assertions of the

18

right were mitigated by his acquiescence to, and responsibility for, numerous delays."); *Steinmetz*, 2014-NMCA-070, ¶¶ 60-62 (finding the defendant's seven assertions of the right were at best nominal considering "his own delay-causing actions"). On June 24, 2014, Defendant ultimately filed the speedy trial motion that is the subject of this appeal. Given this record, we find that Defendant's actions certainly were "a sufficient assertion of his right," although the assertion of the right was not impressive or aggressive. *Spearman*, 2012-NMSC-023, ¶ 33. Contrary to the district court, we weigh this factor in Defendant's favor, albeit slightly. *See Maddox*, 2008-NMSC-062, ¶ 31 (weighing assertion of the right slightly in the defendant's favor when the defendant's assertions were "neither timely nor forceful"); *State v. Moreno*, 2010-NMCA-044, ¶ 35, 148 N.M. 253, 233 P.3d 782 (concluding that the assertion factor weighs only slightly in favor of the defendant when he asserted his right once pro forma, and in a motion to dismiss two and one-half months prior to trial).

**Prejudice**

{23}     The final *Barker* factor requires us to look at the prejudice suffered by the defendant as a result of the delay. *Ochoa*, 2017-NMSC-031, ¶ 48. This analysis is conducted " 'in the light of the interests of defendants which the speedy trial right was designed to protect' "—that is, "preventing oppressive pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the

19

defense will be impaired." *Id.* (quoting *Barker*, 407 U.S. at 532). Generally, it is the defendant's burden to "make a particularized showing of prejudice to demonstrate a violation of any of the three interests." *Samora*, 2016-NMSC-031, ¶ 21. But "this burden varies with the length of pretrial incarceration." *Ochoa*, 2017-NMSC-031, ¶ 52.

{24} In this case, Defendant failed to present any evidence of particularized prejudice to the district court and instead relied on his lengthy period of pretrial incarceration; the district court summarily found Defendant suffered no actual prejudice. "When, as in this case, a defendant was continuously incarcerated for an extended period of time, it requires no speculation to determine that the defendant suffered some prejudice." *Id.* ¶ 57. We, therefore, "presume that Defendant was prejudiced simply by being continuously incarcerated" for nearly twenty-eight months. *Id.* However, in the absence of proof of particularized prejudice, this presumed prejudice does not weigh strongly in Defendant's favor. *Id.* ¶¶ 64-65. And, in light of our analysis below, we ultimately do not weigh this factor in Defendant's favor at all.

{25} The prejudice that Defendant experienced due to his lengthy pretrial incarceration is tempered by the fact that a clarification of the law during the pendency of Defendant's case was to his great advantage. As already noted, in April 2014, the Supreme Court decided *Olsson*, applying the rule of lenity to

20

ambiguous statutory language and holding that a defendant cannot be charged with multiple counts of possession of child pornography under Section 30-6A-3(A) based solely on the possession of multiple images. *Olsson*, 2014-NMSC-012, ¶¶ 2, 47. Defendant benefitted from this decision when the district court granted his motion to merge the twenty counts of possession of child pornography into one count. As a result of *Olsson*, Defendant no longer faced a sentence of thirty years or more but only one fourth degree felony, with a maximum term of incarceration of eighteen months at the time. *See* NMSA 1978, § 31-18-15(A)(10) (2007, amended 2016). Defendant complains that he did not get the full benefit of *Olsson* because he spent more than eighteen months in jail without good time credit. This misses the mark. Had his case been finalized prior to the issuance of *Olsson*, Defendant may have received a much greater term of imprisonment than he ultimately served and it is doubtful whether he would have been able to take advantage of *Olsson* in a collateral proceeding. *See, e.g.*, *Kersey v. Hatch*, 2010-NMSC-020, ¶ 30, 148 N.M. 381, 237 P.3d 683 (holding that "new methodology for review of double jeopardy claims involving multiple separate convictions for felony murder and the underlying predicate felony . . . is not available for retroactive application in habeas corpus proceedings" (citations omitted)).

{26}     Just as the passage of time may benefit a defendant either through the weakening of the state's case or the strengthening of his own case, the passage of

21

time here occasioned a change of the law that benefitted Defendant by greatly reducing his potential term of incarceration. *See Barker*, 407 U.S. at 521 ("[The] deprivation of the right [to speedy trial] may work to the accused's advantage. . . . As the time between the commission of the crime and trial lengthens, [prosecution] witnesses may become unavailable or their memories may fade. . . . Thus, . . . deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself."); *State v. Smith*, 2016-NMSC-007, ¶ 60, 367 P.3d 420 (concluding that delay was not unconstitutionally prejudicial where new methods of DNA statistical analyses that strengthened the defendant's case were made available during the pendency of the case). Given the lack of a particularized showing of prejudice and the corresponding benefit to Defendant from the delay, we decline to weigh this factor in his favor.

**Balancing the *Barker* Factors**

{27}   In balancing the *Barker* factors, no one factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." 407 U.S. at 533. In this case, although the length of the delay weighs heavily in Defendant's favor, the reasons for the delay and the assertion of the right to a speedy trial on balance weigh only slightly in his favor. And while we can presume prejudice because of the length of Defendant's pretrial incarceration, we do not weigh this factor in Defendant's favor given the unique circumstances of this case,

22

which ultimately resulted in a benefit to Defendant. We, therefore, conclude that Defendant was not deprived of his right to a speedy trial. *See Garza*, 2009-NMSC-038, ¶¶ 24, 30, 34, 40 (holding that the defendant's speedy trial rights were not violated when the first three factors weighed in his favor to some degree, but he failed to put on evidence of particularized prejudice); *Montoya*, 2011-NMCA-074, ¶ 24 (same); *Wilson*, 2010-NMCA-018, ¶ 50 (same).

**CONCLUSION**

{28}    For the foregoing reasons, we affirm the district court's denial of Defendant's motion to dismiss for violation of his right to a speedy trial.

{29}    **IT IS SO ORDERED.**


_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**


_____
**STEPHEN G. FRENCH, Judge**


_____
**DANIEL J. GALLEGOS, Judge**

23