This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38918**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JUDY K. SERNA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Melissa A. Kennelly, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Following a jury trial, Defendant appeals her convictions for trafficking and drug possession. On appeal, Defendant challenges the sufficiency of the evidence to support her trafficking conviction and argues that her right to a speedy trial was violated. Unpersuaded, we affirm.

## DISCUSSION

## I. Sufficiency of the Evidence

**{2}** On appeal, Defendant challenges the sufficiency of the evidence supporting her conviction for trafficking. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{3}** "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. At trial, the jury was instructed that, to find Defendant guilty of possession with intent to distribute, the State was required to prove the following elements beyond a reasonable doubt:

1. [D]efendant had methamphetamine in her possession;

2. [D]efendant knew it was methamphetamine or believed it to be some drug or other substance the possession of which is regulated or prohibited by law;

3. [D]efendant intended to transfer it to another;

4. This happened in New Mexico on or about the 1st day of December, 2016.

*See* NMSA 1978, § 30-31-20(A)(3) (2006) (describing possession with intent to distribute). Defendant's challenge relates only to the third element; she contends that insufficient evidence demonstrated her intent to transfer the methamphetamine to another.

**{4}** "Intent to distribute may be proved by inference from the surrounding facts and circumstances." *State v. Becerra*, 1991-NMCA-090, ¶ 22, 112 N.M. 604, 817 P.2d 1246. "Intent to distribute may be inferred when the amount of a controlled substance possessed is inconsistent with personal use." *State v. Curry*, 1988-NMCA-031, ¶ 7, 107 N.M. 133, 753 P.2d 1321.

**{5}** Four baggies of methamphetamine containing varying amounts totaling 5.9 grams were found at Defendant's residence. Three witnesses testified that this amount of methamphetamine was unusually large and inconsistent with personal use. The State's drug analyst expert witness, who examined the drugs at issue, testified that in her over twenty years of drug analysis experience, "usually a lot of our cases are under a gram[,]" that two of the baggies in the present case were instead over a gram, and

that the amount of 3.46 grams found in one baggie was "a larger amount." One of the arresting officers testified that, in his experience, when people have only possessed methamphetamine for personal use, he has seen "very tiny, small amounts in [one] individual baggie[,]" and that the baggies in this case that contained a larger amount were not like anything he has seen for personal use. Another arresting officer, whom the defense stipulated had drug investigation and prosecution expertise, testified that usually he finds small amounts of drugs on people for their personal use, and stated that the amount of methamphetamine contained in one of the baggies "would lead me to wonder if this stuff was being trafficked."

{6}     In addition, different sized baggies, a scale, and a list of names with dollar amounts were also found at Defendant's residence. *See State v. Vallejos*, 1998-NMCA-151, ¶ 22, 126 N.M. 161, 967 P.2d 836 (stating that scales were evidence of a defendant's intent and inconsistent with personal use). One of the officers testified that the packaging of one of the larger baggies also contributed to his impression that the methamphetamine was not simply for personal use and was potentially being trafficked. *Cf. State v. Bejar*, 1984-NMCA-031, ¶ 14, 101 N.M. 190, 679 P.2d 1288 (determining that sufficient evidence supported a trafficking conviction when there was an inference that drugs had been flushed down the toilet and, "two packages of balloons were found in the house and one expert testified that balloons are used for packaging heroin and, additionally, the other paraphernalia for personal use of heroin was found in the house"). We conclude that the amount of methamphetamine, as well as the packaging materials, scale, and list of names amounted to sufficient evidence to permit the jury to infer that Defendant intended to distribute. *See Becerra*, 1991-NMCA-090, ¶ 22.

{7}     Defendant states that the above items were gathered by officers and "staged them for photographs." She asserts that the baggies were for her personal use drugs and jewelry making, the scale was to weigh food and beads, and the cash and list of names and amounts of money were from her house cleaning work. However, the jury was free to reject Defendant's alternative explanation for the presence of all the items. *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

{8}     In light of the foregoing, we conclude that sufficient evidence supported Defendant's conviction.

## II.     Speedy Trial

{9}     As a threshold matter, we first address the State's contention that Defendant's speedy trial challenge is not adequately preserved. Specifically, the State argues that Defendant failed to serve her second motion to dismiss for speedy trial violations on the prosecutor and, as a result, the State had "no adequate or real opportunity to present or develop factual evidence" in response to the second motion.

**{10}** "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056; *see* Rule 12-321(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the trial court was fairly invoked."). Defendant filed motions and presented her arguments on her speedy trial claims to the district court at two different points in the case, and therefore invoked a specific ruling from the district court and adequately preserved the issue for our review. We are unpersuaded by the State's contention that it was unable to counter Defendant's motions, particularly in light of the fact that the State filed a response to Defendant's first motion. Moreover, the State's alleged late notice of Defendant's second motion does not impact our conclusion that the district court had an adequate opportunity to consider and rule on the issue. *See Montoya*, 2015-NMSC-010, ¶ 45; *cf. State v. Valdez*, 1990-NMCA-018, ¶ 15, 109 N.M. 759, 790 P.2d 1040 ("Because [the] defendant did not raise the constitutional claim until this appeal, there were no district court proceedings to develop fully the facts relating to the . . . factors, and the district court had no opportunity to weigh them."). Concluding that this issue was preserved, we proceed to the merits of the issue.

**{11}** "In determining whether a defendant's speedy trial right was violated, [New Mexico] has adopted the United States Supreme Court's balancing test in *Barker v. Wingo*, 407 U.S. 514 . . . (1972)." *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420.

> Under the *Barker* framework, courts weigh "the conduct of both the prosecution and the defendant" under the guidance of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and manner in which the defendant asserted his speedy trial right; and (4) the particular prejudice that the defendant actually suffered.

*Id.* (quoting *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387). "In analyzing these factors, we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his [or her] speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

## A.    Length of Delay

**{12}** "The length of delay serves two purposes under the speedy trial analysis." *State v. Spearman*, 2012-NMSC-023, ¶ 20, 283 P.3d 272. First, it "acts as a triggering mechanism requiring further inquiry into the *Barker* factors once the delay has reached a specified amount of time, depending on the difficulty of the case." *Id.* (internal quotation marks and citation omitted). "A delay of trial of twelve months is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases." *Flores*, 2015-NMCA-081, ¶ 5.

**{13}** The district court did not make a finding as to the complexity of the present case. On appeal, Defendant asserts that this was a simple case, although below she argued that it was a "simple to intermediate case." Before the district court, the State agreed that this was a simple to intermediate case, and on appeal the State does not challenge Defendant's characterization that this was a simple case in which a delay of twelve or more months in bringing the case to trial required further inquiry into the other three *Barker* factors. *Garza*, 2009-NMSC-038. ¶ 2. We, therefore, determine that this case is a simple case for speedy trial analysis.

**{14}** The delay in this case began when Defendant was arrested in December 2016, held for four days, and then released on bond. *Cf. State v. Sanchez*, 1989-NMCA-001, ¶ 8, 108 N.M. 206, 769 P.2d 1297 ("[A]rrest alone, without posting bond, imposition of restrictive conditions of release, or being held to answer for unresolved criminal charges does not trigger a defendant's speedy trial rights under the sixth amendment."). Defendant's trial was held in June 2019. The pendency of the case was therefore approximately thirty months, or two and a half years. Because the length of delay in this case is two and one-half times as long as the threshold for a simple case, it is presumptively prejudicial, and we continue to the second *Barker* factor. *See Flores*, 2015-NMCA-081, ¶ 5.

## B. Reason for Delay

**{15}** "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Serros*, 2016-NMSC-008, ¶ 29 (internal quotation marks and citation omitted). "We assign different weight to different types of delay." *State v. Lujan*, 2015-NMCA-032, ¶ 15, 345 P.3d 1103. "There are three types of delay: (1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason." *State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 (alteration, internal quotation marks, and citation omitted). The first type weighs "heavily against the government," whereas "negligent or administrative delay weighs against the state, though not heavily." *Id.* (alterations, internal quotation marks, and citation omitted). "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Spearman*, 2012-NMSC-023, ¶ 25.

**{16}** As the parties note, the record in the present case is incomplete. Although many items are missing from the record, for our purposes and of critical importance here, absent from the record are either an audio recording or transcript of the February 2019 hearing held by the district court upon Defendant's first motion to dismiss. As well, the district court never issued an order following that hearing. Consequently, this Court does not have available for review any findings from that hearing. In addition, both parties fail to clearly divide the case into different time periods for our consideration and disagree on how nearly all time in the case should be characterized. The State attributes "virtually all the delay" to Defendant, and Defendant does not address some time periods and generally attributes any delay not weighed neutrally to the State. For these reasons, we undertake the following analysis based on our independent review of

the available record, which, despite its incompleteness, is sufficient for our review of the issues. *See Flores*, 2015-NMCA-081, ¶ 4 ("[W]e independently review the record to determine whether a defendant was denied his [or her] speedy trial right and we weigh and balance the *Barker* factors de novo.").

### 1. Delay Attributable to Defendant

**{17}** "[D]elay initiated by defense counsel generally weighs against the defendant." *State v. Salazar*, 2018-NMCA-030, ¶ 22, 458 P.3d 485 (internal quotation marks and citation omitted); *State v. Deans*, 2019-NMCA-015, ¶ 17, 435 P.3d 1280 (determining that a period of delay after withdrawal of defense counsel, to permit new counsel to become familiar with the case, was attributable to the defendant).

**{18}** Defendant's counsel moved to withdraw from the case on June 13, 2018. Counsel stated this was because "Defendant [did] not compl[y] with the terms of the attorney client agreement." The district court granted the withdrawal and set a status hearing, at which the district court told Defendant she had two weeks to hire another private attorney or request an attorney be appointed for her. An order appointing counsel was entered on August 8, 2018. At the status conference, on November 19, 2018, new counsel stated that he would need four or five months to adequately prepare for trial. Ultimately, the district court set trial on January 7, 2019, only two months after the status conference. Consequently, the withdrawal of defense counsel caused a seven-month delay. This seven-month delay from defense counsel's withdrawal until the next trial setting weighs against Defendant. *See Deans*, 2019-NMCA-015, ¶ 17 (attributing delay after withdrawal of defense counsel, and to permit new counsel to become familiar with the case, to defendant).

### 2. Neutral Time

**{19}** Time during which the case was proceeding normally toward trial is not weighed against either party. *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 (stating, "where a case moves toward trial with customary promptness, the period of time is to be weighed neutrally between the parties" (internal quotation marks and citation omitted)).

**{20}** The case began with a criminal complaint filed in magistrate court on December 2, 2016, and proceeded toward an initial trial setting in September 2017. On August 10, 2017, the trial was reset due to Defendant's request for a continuance. As best as we can determine from the available record, those approximately nine months were attributable to the normal progression of the case, including resolution of Defendant's first motion to compel discovery, and thus weigh neutrally. *See Valencia*, 2010-NMCA-005, ¶ 18; *see also Garza*, 2009-NMSC-038, ¶ 27 ("Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable." (internal quotation marks and citation omitted)).

### 3. Delay Attributable to the State

**{21}** We first examine time attributable to administrative delay by the State. *See Flores*, 2015-NMCA-081, ¶ 8 ("More neutral reasons for delay, such as negligent or administrative delay caused, for example, by overcrowded courts, the reassignment of judges, or governmental negligence, weighs against the state, though less heavily." (alteration, omission, internal quotations marks, and citations omitted)).

**{22}** At one point, the trial of this case was set for March 26, 2018, and then reset to June 25, 2018. The record does not clearly indicate the reason for the delayed setting, apart from the State's contention that the case was "bumped" from the March docket. Defendant attributes the delay of this time period to the district court's docket, and based on the parties' apparent agreement on this point, we conclude that this three-month time period of administrative delay weighs slightly against the State.

**{23}** Later in the case, a January 7, 2019 trial setting was reset for June 17, 2019, when trial was ultimately held. The State asserted below, and Defendant does not challenge on appeal, that trial had to be reset to June because on January 7, 2019, "[i]t was set on the docket as the second case, but was not heard[.]" This six-month time period of administrative delay also weighs slightly against the State.

**{24}** Next, we examine the time period during which Defendant sought a continuance in order to adequately prepare for trial. *See State v. Ochoa*, 2017-NMSC-031, ¶ 22, 406 P.3d 505 (concluding that a continuance for the defendant to prepare for trial, including interviewing witnesses, "was a legitimate reason for [the d]efendant to seek to postpone the second trial setting, and the resulting two and one-half month delay does not weigh against him"); *Garza*, 2009-NMSC-038, ¶ 11 ("[I]f either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed."). "We do not expect a defendant to choose between a speedy trial and an adequate defense. [The d]efendant did not weaken his assertion of the right to a speedy trial by requesting two continuances." *Ochoa*, 2017-NMSC-031, ¶ 44 (citation omitted).

**{25}** As noted above, Defendant requested a continuance on August 10, 2017, stating that it was necessary in order to complete witness interviews and identify and file any necessary motions. Trial was reset for March 26, 2018. Defendant did not assert that the continuance was necessary for the State to "comply with its discovery obligations[,]" as she now contends on appeal, and we do not consider that assertion to be supported by the record. However, during this time, on February 20, 2018, Defendant filed a second motion to compel discovery based, in part, on the State's failure to comply with the district court's previous resolution of some discovery issues. The two weeks from the filing of the motion to compel until it was heard by the district court on March 6, 2018, is not counted as part of Defendant's general trial preparation in this period and is dealt with below. The remaining four and a half months of the foregoing time period, during which Defendant also filed an unsuccessful motion to suppress evidence, is considered time Defendant legitimately needed to prepare for trial, and as such, is weighed slightly against the State. *See id.* ¶¶ 22-23 (characterizing a continuance requested by a defendant in order to adequately prepare for trial as part of negligent or administrative delay that is weighed slightly against the state).

**{26}** As previously mentioned, two weeks of delay in February and March 2018 were attributable to the State's failure to provide discovery that Defendant had previously requested, and which the district court had previously ordered the State to provide. This two-week delay should weigh more heavily against the State. *See Flores*, 2015-NMCA-081, ¶¶ 11-12 (weighing the state's discovery delays against the state). Defendant's invitation to attribute more time to the State based on these discovery delays is unsupported by the record.

**{27}** Ultimately, after assessing the reasons for delay, we conclude that, of the thirty months of delay in bringing this case to trial, approximately seven months weigh against Defendant, nine months are considered neutral, thirteen and a half months weigh slightly against the State, and two weeks weigh more heavily against the State. We do not consider the thirteen and a half months of negligent or administrative delay to be such an extraordinary delay that it warrants being weighed more heavily. *See Garza*, 2009-NMSC-038, ¶¶ 26, 30 (recognizing that, how heavily negligent or administrative delay weighs, depends on how protracted or extraordinary the delay is, and determining that ten months of administrative delay weighed slightly against the state); *Suskiewich*, 2016-NMCA-004, ¶ 17 (stating that, "the [administrative] delay . . . was approximately eleven months and, therefore, we weigh it only slightly against the [s]tate"). On balance, we conclude that the reasons for delay weigh slightly against the State.

## C.     Defendant's Assertion of the Right

**{28}** Under this factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "We accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Spearman*, 2012-NMSC-023, ¶ 31 (alteration, internal quotation marks, and citation omitted).

**{29}** Defendant filed six demands for speedy trial, on March 13, 2017, August 21, 2018, August 23, 2018, December 4, 2018, April 12, 2019, and June 6, 2019. Defendant filed two motions to dismiss on speedy trial grounds, on December 31, 2018, and June 6, 2019. Although all demands weigh in Defendant's favor, the first three entries of appearance, pro forma demands are given less weight, as is the last assertion close to trial. *See State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782 (stating, "generally, the closer to trial an assertion is made, the less weight it is given" and "[w]e assign some weight, albeit minimal, in [the d]efendant's favor for this perfunctory [pro forma] assertion"). However, based on Defendant's two assertions in the middle of the case, her two motions for dismissal on speedy trial grounds, and the total number of assertions in the record, we weigh this factor heavily in Defendant's favor. *See Garza*, 2009-NMSC-038, ¶ 32 (stating that evaluation of the third *Barker* factor rests in part on the frequency and force of the defendant's objections to the delay).

## D.     Prejudice

**{30}**     [A] defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect. However, if the length of delay and the reasons for the delay weigh *heavily* in [the] defendant's favor and [the] defendant has asserted [the] right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated.

*Garza*, 2009-NMSC-038, ¶¶ 39-40 (emphasis added). The defendant bears the burden to demonstrate and substantiate prejudice. *See id.* ¶¶ 35-37. We analyze prejudice to the accused in light of three interests that the right to a speedy trial protects: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* ¶ 35.

**{31}**   Here, Defendant was incarcerated for only four days and she has asserted no claim that her defense was impaired due to the delay in bringing the case to trial. Therefore, we limit our analysis to the second interest listed above—minimizing the anxiety and concern of the accused.

**{32}**   In this case, the district court determined that it did not "think [the delay in this case rose] to the level that you don't have to show particularized prejudice, and that has not been shown." On appeal, Defendant generally asserts that she "suffered great anxiety and concern over the thirty months that she awaited her fate[,]" and notes that she had "never been in trouble with the law up until she was charged with the drug offenses at issue." However, Defendant also "acknowledges that her generalized statements, without more, do not support a particularized showing of prejudice." *See Ochoa*, 2017-NMSC-031, ¶ 53 (stating that "[g]enerally, mere allegations are insufficient to prove prejudice" and noting that in cases in which a defendant suffered only minimal incarceration and no evidence in the record supported assertions of other prejudice, no prejudice had been shown); *see In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

**{33}**   In this instance, Defendant was incarcerated for only four days immediately following her arrest and Defendant presented no other evidence demonstrating particularized prejudice that she may have suffered. We therefore conclude that the district court did not err in finding that Defendant had not shown such prejudice.

**E.     Weighing the Factors**

**{34}**   Having considered the *Barker* factors, we conclude that, of the thirty months of delay in bringing this case to trial, approximately seven months weigh against Defendant, nine months are considered neutral, thirteen and a half months weigh slightly against the State, and two weeks weigh more heavily against the State. We further conclude that Defendant frequently and forcefully asserted her right to a speedy trial, which weighs heavily in her favor. However, we also conclude that Defendant has not demonstrated any prejudice as a result of the delay. To the extent Defendant contends that if the State "delays a trial long past a presumptively reasonable point,

prejudice may be presumed even if the defendant is unable to articulate it[,]" we note that the case law she relies upon requires that all the other factors must weigh heavily in the defendant's favor for a court to determine that the defendant need not show prejudice, which is not the case here.

**{35}**    Because Defendant has not shown prejudice and not all of the other *Barker* factors weigh heavily in Defendant's favor, we conclude that Defendant's right to a speedy trial was not violated.

**CONCLUSION**

**{36}**    For the foregoing reasons, we affirm.

**{37}    IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**