**Certiorari Denied, August 4, 2015, No. 35,358**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-081**

**Filing Date: May 20, 2015**

**Docket No. 32,928**

**STATE OF NEW MEXICO,**

**Plaintiff-Appellee,**

**v.**

**ROBERT J. FLORES,**

**Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Caren I. Friedman
Santa Fe, NM

The Pickett Law Firm
Mark L. Pickett
Las Cruces, NM

for Appellant

**OPINION**

**GARCIA, Judge.**

**{1}** A jury found Defendant Robert J. Flores guilty of reckless child abuse resulting in

1

death, in violation of NMSA 1978, § 30-6-1(D)(1), (F) (2009), and tampering with evidence, in violation of NMSA 1978, § 30-22-5(A) (2003). Defendant raises several issues on appeal involving sufficiency of the evidence, whether statements he made to the police should have been suppressed, the State's destruction of evidence, and his constitutional right to a speedy trial. Because we conclude that Defendant's constitutional right to a speedy trial was violated, we need not address the other issues Defendant raises. We reverse and remand to the district court for dismissal of the charges.

## BACKGROUND

**{2}** This case involves the tragic suffocation death of Kalynne Flores, Defendant's four-and-one-half-month-old daughter. Defendant was entrusted with Kalynne's care one evening while the baby's mother worked the night shift. At about 10:30 p.m., Defendant wanted to leave the home to go to the store. He did not want to take Kalynne with him and he did not want to put her in the bed where she usually slept[1] because he did not want the neighbors to hear her cry while he was away. He placed Kalynne on top of clothing in a laundry basket, put the laundry basket inside of a walk-in closet inside of a bedroom, and left the home. Defendant returned home forty-five minutes later, but did not check on Kalynne until a few hours later, at which time he found her dead. The medical examiner ruled that the cause of death was asphyxia. Defendant was arrested for Kalynne's death the next day, on December 7, 2007. His trial began more than five years later on January 30, 2013.

## DISCUSSION

### A.    Speedy Trial General Principles

**{3}** The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. The New Mexico Constitution affords a similar right: "In all criminal prosecutions, the accused shall have the right to . . . a speedy public trial." N.M. Const. art. II, § 14. However, "[a] defendant has no duty to bring himself to trial[.]" *Barker v. Wingo*, 407 U.S. 514, 527 (1972). "[I]t is ultimately the [s]tate's responsibility to bring a defendant to trial in a timely manner." *State v. Stock*, 2006-NMCA-140, ¶ 17, 140 N.M. 676, 147 P.3d 885.

**{4}** The United States Supreme Court provided four factors to consider in *Barker*: (1) length of delay, (2) reasons for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. 407 U.S. at 530. "Each of these factors is weighed either in favor of or against the [s]tate or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *State v. Spearman*, 2012-NMSC-023, ¶ 17, 283 P.3d

---

[1]Kalynne had a crib, but the mother testified that she did not use it and that the baby generally slept in the bed with her and Defendant.

2

272. Because none of these factors alone is sufficient to establish a violation, we analyze speedy trial claims on a case-by-case basis. *State v. Garza*, 2009-NMSC-038, ¶ 23, 146 N.M. 499, 212 P.3d 387; *State v. Palacio*, 2009-NMCA-074, ¶ 9, 146 N.M. 594, 212 P.3d 1148. In analyzing these factors, we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* factors de novo. *State v. Montoya*, 2015-NMCA-___, ¶ 12, ___ P.3d ___ (No. 32,525, Feb. 25, 2015).

## B.      Length of Delay

{5}      The length of delay serves two purposes in our analysis. First, it acts as a mechanism triggering "further inquiry into the *Barker* factors once the delay has reached a specified amount of time, depending on the difficulty of the case." *Spearman*, 2012-NMSC-023, ¶ 20 (internal quotation marks and citation omitted). A delay of trial of twelve months is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases. *Id.* ¶ 21. Second, we consider how long the delay extends beyond this presumptively prejudicial period, because "the greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. We calculate the length of delay from the time the defendant "becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (internal quotation marks and citation omitted).

{6}      The district court found that this was a complex case. Defendant contends that it was a case of intermediate complexity because it involved only "two counts against a single defendant." We defer to the district court's finding that this was a complex case because it was in the best position to make that determination. *See State v. Manzanares*, 1996-NMSC-028, ¶ 9, 121 N.M. 798, 918 P.2d 714 ("The question of the complexity of a case is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities.").

{7}      Defendant was arrested on December 7, 2007. His trial began nearly five years and two months later on January 30, 2013. This nearly sixty-two month delay extends almost forty-four months beyond the presumptively prejudicial threshold of eighteen months for a complex case. Once the presumptively prejudicial threshold has been exceeded, the state must present evidence to show that a defendant's right to a speedy trial has not been violated. *See Garza*, 2009-NMSC-023, ¶ 16. This delay was considered extraordinary and weighs heavily in Defendant's favor unless sufficiently tempered by a consideration and analysis of all four *Barker* factors. *See State v. Maddox*, 2008-NMSC-062, ¶¶ 12, 37, 145 N.M. 242, 195 P.3d 1254 (addressing a twenty-eight month delay as "extraordinary" and evaluating all four Barker factors in detail to determine whether the unique facts significantly tempered the prejudice to the defendant), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48.

3

## C.    Reasons for Delay

**{8}**    "Closely related to length of delay is the reason the government assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). The reasons for the delay "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). Generally, different reasons for delay are accorded different weight. *Id.* Bad faith or deliberate delay in order to hamper the defense or gain some impermissible advantage at trial is weighed heavily against the state. *Id.* Valid reasons for delay, such as a missing witness, reasonable time needed to oppose the defendant's pretrial motions, and a defendant "go[ing] into hiding" may be "wholly justifiable" and not weighed against the state. *Id.* ¶ 27 (internal quotation marks and citation omitted). More neutral reasons for delay, such as "negligent or administrative delay . . . caused, for example, by overcrowded courts, the reassignment of judges, or governmental negligence[,]" *State v. Steinmetz*, 2014-NMCA-070, ¶ 7, 327 P.3d 1145 (internal quotation marks and citation omitted), weighs against the state, though "less heavily." *Garza*, 2009-NMSC-038, ¶ 26.

**{9}**    However, our tolerance of negligent or administrative delay "varies inversely with its protractedness[.]" *Id.* ¶ 26 (internal quotation marks and citation omitted). Thus, where the government's negligence and administrative burdens cause an excessively protracted delay, we weigh such delay heavily against the state. *See State v. Taylor*, 2015-NMCA-012, ¶ 25, 343 P.3d 199 (concluding that delays caused by the state's negligence and lack of diligence weigh heavily against the state where there was an "excessively long" two-year delay in a simple case); *Steinmetz*, 2014-NMCA-070, ¶ 7 ("The degree of weight we assign against the prosecution for negligent delay is closely related to the length of the delay; the longer the delay, or the greater the threat to the fairness to the defendant, the less tolerant we are of the delay." (alterations, internal quotation marks, and citation omitted)).

**{10}**    We proceed by dividing the nearly sixty-two month delay in this case into digestible portions and discussing the reasons for each portion. We note that the district court's order denying Defendant's second speedy trial motion did not include findings specific to particular periods of delay except for the State's interlocutory appeal, which the district court found was "a valid reason" for delay. As to the remainder of the delay, the order contained only a general finding that "the majority of the delay [was] due to both parties filing numerous motions and conducting discovery" and that the delays were not "deliberate attempts to delay the trial in order to hamper the defense."

### 1.    December 2007 to May 2008

**{11}**    During the first six months after Defendant's arrest on December 7, 2007, and the first five months after he waived his arraignment on January 2, 2008, the record shows no activity initiated by the State to prosecute this case other than a request to review Defendant's conditions of release because he was seen at a local basketball game. During this time, Defendant submitted three letters to the State asking for discovery because none

4

had been provided within ten days of his arraignment waiver, contrary to Rule 5-501(A) NMRA. Although the State provided many requested materials by February 18, 2008, it did not respond to Defendant's additional requests until May and June 2008. Furthermore, the State did not file its initial witness list until May 21, 2008, and only did so after Defendant submitted a fourth letter requesting the State to disclose its witnesses so he could interview them.

**{12}** The State's duties under Rule 5-501(A) are not optional, nor are they triggered by Defendant's requests. *See* Rule 5-501(A) (providing that "within ten (10) days after arraignment or the date of filing of a waiver of arraignment, . . . the state *shall* disclose or make available to the defendant [an enumerated list of discoverable materials and a list of witnesses it intends to call at trial]" (emphasis added)). Accordingly, we attribute this six-month delay, during which the State did not timely fulfill its duties to Defendant and then did so only in response to Defendant's urging, as conduct that weighs against the State. *Cf. Garza*, 2009-NMSC-038, ¶ 28 (concluding that a "delay of four months in which th[e] case sat in magistrate court before the [s]tate . . . refiled in district court" was "negligent and weigh[ed] against the [s]tate").

### 2. May 2008 to January 2009

**{13}** The trial was first set for June 3, 2008. On May 22, 2008, the State filed a petition to extend the trial date by six months, up to and including January 2, 2009, because the prosecutor was scheduled for another jury trial for a different case during that time and Kalynne's autopsy report had "only recently been made available to the State and defense counsel." Although Defendant stipulated to this extension, the reasons for it were wholly attributable to the State—its prosecutor was scheduled for another trial and the State did not explain why the autopsy report was not available to the parties earlier. We therefore classify this six-month delay as administrative delay that weighs against the State. *See Steinmetz*, 2014-NMCA-070, ¶ 7 (weighing administrative delay against the state); *State v. Moreno*, 2010-NMCA-044, ¶¶ 28-29, 148 N.M. 253, 233 P.3d 782 (concluding that, even though defense counsel stipulated to continuances requested by the state due to delay caused by the state, the delay weighed against the state).

### 3. January 2009 to March 2009

**{14}** In the fall of 2008, the district court rescheduled the trial for February 3, 2009, and then rescheduled it again for March 30, 2009 because more days were needed for trial. In January 2009, the State filed the first of several petitions to our Supreme Court to extend the time in which to try Defendant based on the six-month rule that existed at that time. *See* Rule 5-604 (B)(1), (D) NMRA (2008) (requiring that criminal trials be commenced within six months after arraignment unless the Supreme Court grants an extension). The Supreme Court granted an extension until May 2, 2009.

**{15}** In early March 2009, about four weeks before trial, Defendant filed three pretrial

5

motions: a motion to suppress, a motion for a supplemental juror questionnaire, and a motion to dismiss one of the charges. Defendant did not ask for a trial continuance. Three weeks later, the State moved for an extension of time to respond to Defendant's motions, stating that "[a]dditional time is necessary for the State to research case law to adequately prepare and file a response." The district court granted the motion, extending the time for the State's response until April 15, 2009, necessitating another trial continuance. In late March 2009, Defendant filed his first speedy trial demand in which he detailed the delays that had occurred up to that time. The State filed its responses on May 4, 2009.

{16}     The fact that a defendant files pretrial motions does not automatically weigh against him in a speedy trial analysis. We instead determine whether the reasons for the delay in disposing of the motions are attributable to the defendant or to the state. *See, e.g.*, *State v. Winters*, 690 N.W.2d 903, 909 (Iowa 2005) (concerning Iowa's statutory speedy trial right, stating that "the determination of whether pretrial motions . . . excuse a failure to comply with the speedy-trial rule essentially rests on the strength of the underlying reasons for the delay in disposing of the motions . . . , not the mere existence of the motions" and concluding that, in the absence of an explanation of why motions made six weeks before the trial deadline could not be heard before the deadline, "the only ground in the record to support the [trial] continuance was the filing of the motions[,]" which was "insufficient"). In this case, Defendant filed three pretrial motions four weeks before the March 30, 2009 trial setting and well within the time allocated by rule for the State to respond to the motions. *See* Rule 5-120(E) NMRA ("Unless otherwise specifically provided in these rules, a written response shall be filed within fifteen (15) days after service of the motion."). The reason cited by the State for its inability to timely respond to these motions was that it needed more time to research case law and to prepare its response. Therefore, this three-month delay is attributable to, and weighs against, the State. *See Garza*, 2009-NMSC-038, ¶ 29 (stating that delays caused by administrative burdens such as an understaffed prosecutor's office weigh against the state).

### 4.     April 2009 to mid-July 2009

{17}     The district court rescheduled trial a fourth time for July 13, 2009, in order to deal with the pending motions. On May 22, 2009, the Supreme Court granted the State's second Rule 5-604 extension, which gave the State until August 2, 2009 to commence trial. On June 18, 2009, about a month before trial, but three days before the hearing on Defendant's suppression motion, the State moved to exclude testimony from Defendant's expert. This motion had to be resolved before Defendant's March 2, 2009 suppression motion because Defendant intended to call his expert as a defense witness at the suppression hearing. Although the district court attempted to resolve the pending motions before the July 13, 2009 trial setting, it ran out of time and had to finish the motions hearing on July 15, 2009, necessitating another trial continuance. Defendant then filed his second speedy trial demand.

{18}     The district court's inability to resolve the parties' motions prior to the July 13, 2009, trial setting is an administrative delay we attribute to its congested docket and the State's

6

delay in filing a motion to exclude Defendant's expert witness report that was prepared on January 15, 2009. Therefore, we weigh this three-and-one-half-month delay against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (stating that delays caused by administrative burdens such as congested dockets weigh against the state).

### 5. Mid-July 2009 to Late November 2009

**{19}** The district court rescheduled trial a fifth time for November 30, 2009. On August 18, 2009, the Supreme Court granted the State's third Rule 5-604 extension petition, over Defendant's written opposition, giving the State until January 2, 2010 to try Defendant. On September 24, 2009, Defendant filed his first motion to dismiss for violation of his speedy trial right.

**{20}** In October and November of 2009, Defendant moved twice for a change of venue due to the extensive coverage of the case by the local media. The district court denied the first motion, but granted the second motion in late November 2009, changing the venue to Bernalillo County and necessitating a sixth trial setting. Because the November 30, 2009 trial setting was vacated due to Defendant's meritorious venue change motion, we weigh this four-month delay neutrally. *See Garza*, 2009-NMSC-038, ¶ 27 (recognizing that delay for a valid reason may be "wholly justifiable" (internal quotation marks and citation omitted)).

### 6. December 2009 to September 2010

**{21}** On December 18, 2009, the State petitioned the district court to extend the trial date until July 2, 2010, which would have been eight months after the venue change, stating that resetting the trial "*will* require special arrangements to be made with the [c]ourt in Bernalillo County" to accommodate the five-to-seven-day trial. (Emphasis added.) The district court granted the extension. However, the record shows that no trial date was obtained in the new venue until May 2010—five months after the extension was granted—at which time, the trial was further delayed until September 2, 2010. Although we expect a venue change to cause some delay, the ten-month delay here is significant considering Defendant's trial had already been delayed for two years and he had asserted his speedy trial right three times. Nothing in the record indicates that the State attempted to secure an earlier trial date. To the contrary, the language in the State's extension petition shows that the State had not yet attempted any accommodations with the new venue before it filed the petition. Furthermore, there was an additional five-month delay in setting the September 2010 trial date with the new venue. Therefore, we attribute the six-month delay between late November 2009, when the court granted the venue change, and late May 2010, when the September 2010 trial date was finally scheduled, as negligent delay against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (stating that delays caused by administrative burdens such as congested dockets weigh against the state).

### 7. September 2010 to March 2011

**{22}** On August 5, 2010, the judge that had been assigned to this case recused himself. Another judge was assigned on August 20, 2010, but she recused herself on August 24, 2010. The case was not assigned to a third judge until September 14, 2010. Accordingly, the September 2, 2010 trial setting was vacated.

**{23}** The district court held a status conference on September 17, 2010. The status conference order stated that Defendant intended to file two additional motions and that his pending motions were ready to be heard. It ordered that Defendant's final motions be filed by October 15, 2010, and that it would resolve those and other previously pending motions at a hearing on November 2, 2010, "if time permits[.]" The district court delayed in setting a trial date until December 8, 2010, three months after the status conference, at which time, the trial was set for April 6, 2011.

**{24}** On February 16, 2011, the State moved to continue the April 6, 2011 trial setting because the prosecutor assigned to the case had been appointed to the judiciary, another prosecutor would need time to prepare for the trial, and the state's budget crisis required special appropriations from the Legislature "to cover the extraordinary expenses . . . result[ing] from the change of venue in this case." Defendant objected to the continuance.

**{25}** On March 10, 2011, the district court denied the State's continuance motion. Two days later, however, it partially granted Defendant's motion to exclude certain evidence, including evidence that the reason Defendant had left the home on the night of Kalynne's death was for the purpose of buying beer. The State filed a motion to reconsider the ruling, which was denied. The State then filed a notice of appeal as to that ruling, necessitating vacation of the April 6, 2011 trial setting.

**{26}** Although Defendant sought to file two additional pretrial motions after the September 2, 2010 trial setting was vacated, he had not asked for a continuance of the September 2, 2010 trial. This trial setting was vacated due to the recusal of judges, which is an administrative delay that weighs against the State. *See Steinmetz*, 2014-NMCA-070, ¶ 7 ("[N]egligent or administrative delay . . . caused, for example, by overcrowded courts, the reassignment of judges, or governmental negligence" is weighed against the state "because the ultimate responsibility for such circumstances rests with the government rather than with the defendant." (alterations, internal quotation marks, and citations omitted)). Adding to the delay, the district court did not obtain a new trial date for several months, until December 8, 2010, at which time, the trial was further delayed until April 6, 2011. Accordingly, we weigh the nearly seven-month delay between the September 2, 2010 trial setting and the State's notice of appeal in late March 2011 as an administrative delay against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (stating that delays caused by administrative burdens such as congested dockets weigh against the state).

## 8. March 2011 to July 2012

**{27}** From the filing of the State's notice of appeal on March 23, 2011, to the Court of

8

Appeals mandate issued on July 23, 2012, the district court was without jurisdiction to try the case. We must determine whether this sixteen-month delay weighs against the State.

**{28}** "The *Barker* test furnishes the flexibility to take account of the competing concerns of orderly appellate review on the one hand, and a speedy trial on the other." *Unites States v. Loud Hawk*, 474 U.S. 302, 314 (1986). "The assurance that motions to suppress evidence or to dismiss an indictment are correctly decided through orderly appellate review safeguards both the rights of defendants and the 'rights of public justice.'" *Id.* at 313. Given these important public interests, "an interlocutory appeal by the [g]overnment ordinarily is a valid reason that justifies delay." *Id.* at 315. In evaluating "the purpose and reasonableness of such an appeal," courts may consider factors including "the strength of the [g]overnment's position on the appealed issue, the importance of the issue in the posture of the case, and—in some cases—the seriousness of the crime." *Id.* The state's appeal of a "clearly tangential or frivolous" issue would weigh heavily against the government and "the charged offense usually must be sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of the appeal." *Id.* at 315-16.

**{29}** Defendant asserts that the State's appeal was "weak[.]" However, he does not allege or show that the appeal was brought in "bad faith" or for a "dilatory purpose." *Id.* at 316. Although this Court ultimately affirmed the district court's order on the basis that the evidence sought to be suppressed would have been more prejudicial than probative, it concluded that the district court had erred in part when it found that the evidence was not relevant. *State v. Flores*, No. 31,205, mem. op. **3-4 (N.M. Ct. App. Apr. 26, 2012) (non-precedential). Moreover, the district court relaxed Defendant's conditions of release while the appeal was pending, despite the seriousness of the charged offenses. *See Loud Hawk*, 474 U.S. at 316. Therefore, we weigh the sixteen-month delay due to the State's interlocutory appeal neutrally.

### 9. July 2012 to the January 30, 2013 Trial

**{30}** On August 21, 2012, Defendant moved again to dismiss the charges based on violation of his speedy trial right. At the October 17, 2012 hearing during which the district court denied Defendant's speedy trial motion, it made the following comments regarding its trial scheduling for this case:

> The court will proceed at this time to identify a [trial] date. Again, the court had not done that . . . because, quite frankly, the court had gotten a little tired asking for the Second Judicial District to set aside, I believe it was a ten-day trial, and then cancelling it on them. So, at this point, I believe that we are prepared to go to trial. I don't believe that the court, based on its docket for the balance of the year, is going to be able to set this matter before January. And, again, the court does not believe that it would be appropriate to ask the Second Judicial District to vacate the trials scheduled up in that district in order to accommodate the dates for this trial. Therefore, the court will try and

9

bring this matter to trial as expeditiously as possible, but with the understanding that it will have to rely on the Second Judicial District to identify an appropriate period of time that they can accommodate us.

The district court then obtained a trial date in Albuquerque on October 22, 2012—three months after it regained jurisdiction—at which time, the trial was set for January 30, 2013. We attribute this six-month delay to the district court's administrative decision to delay obtaining a trial date for purposes of accommodating the Second Judicial District and its own docket. We therefore weigh this delay against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (stating that delays caused by administrative burdens such as congested dockets weigh against the state).

## D.    Assertion of the Right

**{31}**    A defendant who fails to assert his speedy trial right does not waive that right. *Id.* ¶ 31. Instead, the strength of a defendant's assertion of his speedy trial right is considered with the other *Barker* factors. *Id.* ¶ 31. We generally assess the timing and manner in which the right was asserted in order to determine whether the defendant was "denied needed access to [a] speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Id.* ¶ 32. Although we "accord weight to the 'frequency and force' of the defendant's objections to the delay[,]" the force of a defendant's assertions is mitigated where he filed motions that were "bound to slow down the proceedings," such as a motion asking for additional time, a motion to appoint new counsel, a motion to reset the trial, or other "procedural maneuvers[.]" *Id.* (internal quotation marks and citations omitted).

**{32}**    As we have stated in our discussion of the reasons for delay, Defendant specifically asserted his right to a speedy trial at least four times within the sixty-two-month period of delay in this case. His first two assertions came in the form of detailed speedy trial demands placing the State and the district court on notice of the repeated delays in this case and Defendant's desire to timely face trial. His third and fourth assertions were made as timely motions to dismiss for violation of his speedy trial right. Although Defendant did not formally oppose the State's delays early on, he routinely opposed them as the delay increased. The pretrial motions that Defendant filed around the time he asserted his speedy trial right were not numerous, frivolous, untimely, or the kind of motions that are "bound to slow down the proceedings[.]" *Id.* (internal quotation marks and citation omitted). Therefore, we conclude that Defendant adequately asserted his right, and we weigh this factor heavily in Defendant's favor.

## E.    Prejudice and Balancing the Factors

**{33}**    We analyze the prejudice factor under three interests: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *State v. Lujan*, 2015-NMCA-___, ¶ 20, ___ P.3d ___ (No. 33,349, Feb. 18, 2015). Beside the prejudicial factor of the nearly sixty-two

10

month delay that is deemed extraordinary in this case, we must also consider any factors that might temper the prejudice to Defendant. *See Maddox*, 2008-NMSC-062, ¶ 37 (recognizing that the factors tempering prejudice must be carefully considered). We weigh this factor in a defendant's favor only where there is a particularized showing of undue prejudice. *Garza*, 2009-NMSC-038, ¶ 35.

**{34}**   In his second speedy trial motion, Defendant asserted that the delay prejudiced his defense because one of the State's expert witnesses—the doctor who supervised Kalynne's autopsy—testified in a deposition that he was "unable to recall what information he reviewed in arriving at his opinions" and that even after the prosecutor attempted to refresh the doctor's memory, "[he] still could not remember the evidence he reviewed." Defense counsel also included affidavits of Defendant and his mother with the motion detailing the anxiety and concern he had suffered. In his affidavit, Defendant stated that he had difficulty obtaining employment while the charges were pending and that he lost one job in early 2008 "due to harassment [his] employer received from individuals"; he and his family "experienced severe financial restraints due to this case"; the conditions of release imposed upon him earlier in the case, along with "emotional trauma, stress and anxiety" he experienced prevented him from continuing his college education, although he was able to resume his studies in August 2011; he "had a hard time finding an apartment" because he was turned away when landlords found out about the charges against him; he experienced difficulty in school and trouble sleeping because he worried about his criminal case "most of the time"; he "had to seek medical attention" for his anxiety, including "two trips to the emergency room" and a prescription for anti-anxiety medication; extensive media attention about the case had "severely tarnished" his and his family's reputation; and he had "received threats" because of the case that "frighten[ed him] and [his] family." His mother's affidavit vouched for Defendant's anxiety, his trips to the emergency room, his anti-anxiety medication, and his difficulty concentrating on school work.

**{35}**   The district court's order denying the speedy trial motion found that "in terms of undue prejudice to . . . [D]efendant, the [c]ourt has been very generous in terms of the leniency on the restrictions imposed during this period of [delay]"; "every defendant goes through a level of anxiety"; and Defendant "has not met the burden of showing a speedy trial violation[.]" We interpret this language to mean that the district court found that the prejudice suffered by Defendant was ameliorated by a relaxing of his conditions of release over the course of the delay, and was therefore not undue. The order did not address Defendant's assertion that the delay hampered his defense.

**{36}**   We note that Defendant's showing of the anxiety and concern category of prejudice was vague with regard to the time frames in which he suffered it, thus making it difficult to determine whether and how much of it occurred before or after the eighteen-month presumptively prejudicial threshold. *See Spearman*, 2012-NMSC-023, ¶ 39. However, we need not determine whether Defendant sufficiently showed undue prejudice because the remaining three *Barker* factors weigh so heavily in his favor; undue prejudice is presumed under such circumstances. *See Garza*, 2009-NMSC-038, ¶ 39 ("[I]f the length of delay and

11

the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated."); *Taylor*, 2015-NMCA-012, ¶ 25 (holding that the defendant's speedy trial right was violated without a particularized showing of prejudice because the nearly two-year delay in a simple case was "excessively long[,]" the state was responsible for most of this delay due to neglect and lack of diligence, and the defendant adequately asserted his right); *see also United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008) ("[E]xcessive delays can 'compromise[] the reliability of a trial in ways that neither party can prove or, for that matter, identify.' Due to these concerns, 'no showing of prejudice is required when the delay is great and attributable to the government.' Instead, we presume prejudice." (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992) and *United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992))).

**CONCLUSION**

**{37}**     The nearly sixty-two month delay in bringing this case to trial was extraordinary. It exceeded the presumptively prejudicial threshold by almost forty-four months. Because the delay in this case was extraordinary and at least thirty-six months of it was attributable to the State's negligence and administrative burdens, we weigh the length of delay and reasons for the delay factors heavily against the State. Defendant consistently and definitely expressed his objections to the State's delays and his assertion of the right to be given a speedy trial. Because the first three *Barker* factors weigh so heavily in Defendant's favor, we presume undue prejudice and no further showing of prejudice is required. Despite this presumption, Defendant did present evidence of various particular forms of prejudice that he suffered during the long delay in this case. We therefore conclude that Defendant's speedy trial right was violated. We reverse Defendant's convictions and remand this case to the district court to dismiss the charges against him.

**{37}     IT IS SO ORDERED.**

                                        _____

                                        **TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**

12