This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36612**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**ISAIAH MONTOYA,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Judge**

Hector H. Balderas, Attorney General
Emily Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
C. David Henderson, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Defendant Isaiah Montoya appeals his convictions for five counts of burglary of a vehicle and three counts of larceny. On appeal, Defendant contends that his constitutional right to a speedy trial was violated and that there was insufficient evidence to support his convictions. We conclude that his speedy trial right was upheld and that the State presented sufficient evidence to support the convictions. Therefore, we affirm.

**BACKGROUND**

**{2}** Defendant came into Ruidoso police custody on May 7, 2015. While there, the police began to suspect Defendant's connection to a spate of vehicle burglaries and larcenies in the Grindstone Canyon residential area of Ruidoso that were the subject of police reports. During questioning, Defendant confessed to entering unlocked vehicles in that area without authorization and taking things from them. Based on information gathered during the interview, prosecutors filed a criminal complaint against Defendant in magistrate court and issued a warrant for his arrest on June 15, 2015. On August 10, 2015, the warrant was quashed and charges were filed in district court.

**{3}** On September 19, 2016, the district court held a hearing on Defendant's motion to dismiss the charges against him for violation of his speedy trial right. The court denied the motion and then entered findings of fact, some of which we rely on for our analysis. On March 24, 2017, the court orally denied Defendant's second such motion and tried the case. The jury found Defendant guilty of five counts of burglary and three counts of larceny.

## DISCUSSION

### I. Defendant's Right to a Speedy Trial Was Not Violated

**{4}** The Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution establish an accused's right to a speedy trial. "The heart of the right . . . is preventing prejudice to the accused." *State v. Garza*, 2009-NMSC-038, ¶ 12, 146 N.M. 499, 212 P.3d 387. To determine whether the right has been violated, New Mexico courts apply the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), to the particular facts and circumstances of the case. *Garza*, 2009-NMSC-038, ¶¶ 11, 13.

**{5}** The *Barker* test consists of four primary factors: (1) the length of delay in bringing the case to trial; (2) the reasons for the delay; (3) the defendant's assertion of the speedy trial right; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530. We consider these factors in light of the prosecution's and the defendant's conduct. *State v. Smith*, 2016-NMSC-007, ¶ 58, 367 P.3d 420. No one factor is necessary or sufficient for finding a violation of the right; "[r]ather[,] they are related factors and must be considered together with such other circumstances as may be relevant." *State v. Spearman*, 2012-NMSC-023, ¶ 18, 283 P.3d 272 (internal quotation marks and citation omitted). On review, "we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied his speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81.

### A. Length of Delay

**{6}** "The length of delay serves two purposes under the speedy trial analysis." *Spearman*, 2012-NMSC-023, ¶ 20. First, it "acts as a triggering mechanism requiring further inquiry into the *Barker* factors once the delay has reached a specified amount of

time, depending on the difficulty of the case." *Id.* (internal quotation marks and citation omitted). Second, it is "one of the four *Barker* factors to be weighed and balanced in the final speedy trial inquiry." *Id.*

**1.     We Presume Prejudice to Defendant Based on the Length of Delay From the Date His Right Attached to His Trial Date**

**{7}**     The length of delay in this case is at issue because the parties disagree on when Defendant's speedy trial right attached. Defendant argues it attached on June 15, 2015, the date he was charged in magistrate court and an arrest warrant issued. The State argues it attached on August 10, 2015, the date Defendant was indicted in district court.

**{8}**     In general, the speedy trial right attaches when a defendant "becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *Flores*, 2015-NMCA-081, ¶ 5 (internal quotation marks and citation omitted). Here, the district court found that the arrest warrant issued by the magistrate court was never served on Defendant and that it was quashed on August 10, 2015. In other words, arrest was not the event triggering Defendant's right; rather, it was the filing of charges against him on either June 15 or August 10. We need not resolve the parties' dispute over when Defendant became an accused, as the difference of about two months in the length calculation is not significant enough, under the facts of this case, to affect our overall analysis. *See State v. Hayes*, 2009-NMCA-008, ¶ 9, 145 N.M. 446, 200 P.3d 99 (declining to address the issue of when the defendant's speedy trial right attached because the resolution of that issue would not alter the court's ultimate conclusion).

**{9}**     The parties agree, and the district court found at the speedy trial hearing, that this was a simple case. We likewise consider it one. *See Flores*, 2015-NMCA-081, ¶ 6 (deferring to the district court finding on case complexity). As a simple case, its delay of either nineteen and one-half months or about twenty-one months passes the twelve-month threshold at which we presume prejudice. *See Garza*, 2009-NMSC-038, ¶ 48. Under this circumstance, the State has the burden to show that Defendant's speedy trial right was not violated, *see Hayes*, 2009-NMCA-008, ¶ 9, and we continue to a full *Barker* analysis, using the length of delay as the first factor in our assessment, *see Garza*, 2009-NMSC-038, ¶ 23.

**2.     The Length of Delay Weighs Somewhat Heavily Against the State**

**{10}**     The parties agree that the length of delay weighs somewhat heavily against the State. Given the case's continuation of either seven and one-half months or about nine months past the presumptively prejudicial mark, we, too, weigh this first *Barker* factor somewhat heavily against the State. *Compare State v. Wilson*, 2010-NMCA-018, ¶ 29, 147 N.M. 706, 228 P.3d 490 (weighing a delay of five months past the presumptively prejudicial mark in a simple case "more than slightly" against the state), *with State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199 (weighing a delay of twelve months past the presumptively prejudicial mark in a simple case "heavily" against the state).

**B.    The Reasons for the Delay in Bringing Defendant to Trial Weigh Against the State**

**{11}**    Defendant argues that the reasons for the delay in bringing him to trial weigh heavily against the State, while the State, in contrast, argues that the reasons should not weigh against it. The parties further disagree with each other and the district court about the division of some time periods for the purpose of this analysis. Before resolving these issues and deciding in which party's favor each period of delay weighs, we review the law and our function in relation to this factor.

**{12}**    The reason for a period of delay "may either heighten or temper the prejudice to the defendant caused by the length of the delay." *State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121 (internal quotation marks and citation omitted). The weight of such prejudice depends on the type of delay; those types include: "(1) deliberate or intentional delay; (2) negligent or administrative delay; and (3) delay for which there is a valid reason." *State v. Suskiewich*, 2016-NMCA-004, ¶ 9, 363 P.3d 1247 (internal quotation marks and citation omitted). The first type weighs heavily against the state. *Id.* The second type, associated with more neutral reasons, such as court overcrowding, judge reassignment, or "governmental negligence," also weighs against the state, though less heavily than the first, *Flores*, 2015-NMCA-081, ¶ 8 (alteration, internal quotation marks, and citation omitted), except where the delay is excessively protracted, in which case it weighs heavily, *see Taylor*, 2015-NMCA-012, ¶ 25. Concerning the third type, where there is a valid reason for the delay, such as a missing witness, we consider the reason justification for "appropriate" delay. *Spearman*, 2012-NMSC-023, ¶ 25 (internal quotation marks and citation omitted). The final type of delay is that caused by the defense and is weighed against the defendant. *State v. Brown*, 2017-NMCA-046, ¶ 18, 396 P.3d 171.

**1.    June 15, 2015 to October 2, 2015—Approximately Three and One-Half Months of Neutral Delay**

**{13}**    Corresponding to their disagreement on when Defendant's speedy trial right attached, the parties view the beginning date of Defendant's case differently: Defendant considers it June 15, 2015, and the State considers it August 10, 2015. The district court agreed with Defendant. We need not resolve this issue, because we ultimately conclude that under either beginning date, the first period of delay weighs neutrally.

**{14}**    Overall, the State argues that the period from August 10 to October 2, 2015, should weigh neutrally. While Defendant agrees with the State concerning the portion of that period up to August 19 (and argues that the previous, June 15 to August 19 period should also weigh neutrally), he asserts that the delay from August 19, 2015 to October 2, 2015, should weigh against the State.

**{15}**    We disagree with Defendant that the latter portion of this timeframe should weigh against the State. Defendant reasons that, during the delay from August 19 (when the notice of Defendant's September 4 arraignment, mailed to Defendant's apparently

correct address, was returned to the district court) to October 2, "[the] State should have been aware of the need to locate [Defendant]" and "[Defendant bore] no responsibility for the delay." Defendant's contentions do not compel his conclusion, however, because what would weigh against the State is a finding that the State was negligent in pursuing Defendant, *see Doggett v. United States*, 505 U.S. 647, 652, 657 (1992), and that is not what the district court found.

**{16}** Considering the district court's actual findings, this period weighs neutrally. The court made no finding that the State was negligent in pursuing Defendant; to the contrary, it found that "the State could not find [Defendant]" from June 15 to September 4, 2015, (which implies that the State was indeed looking for him) and that "Defendant's whereabouts [were] not known to the State" from September 4 to October 2. We defer to these findings, *see Flores*, 2015-NMCA-081, ¶ 4, and consider any objection to them waived since Defendant does not challenge them, *see* Rule 12-318(A)(3) NMRA. In short, the State was not to blame for this period of delay, *cf. State v. Maddox*, 2008-NMSC-062, ¶ 17, 145 N.M. 242, 195 P.3d 1254 (deeming the state not responsible for periods of delay in which a defendant is outside the jurisdiction and the state is unaware of his or her whereabouts), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48, and so this approximately three and one-half month period weighs neutrally.

**2.    October 2, 2015 to December 4, 2015—Approximately Two Months Slightly in Defendant's Favor**

**{17}** Defendant was located on October 2, 2015, having been served with a bench warrant for his failure to appear at the September arraignment.[1] The parties generally agree that the period from October 2 to December 4, 2015, (the date Defendant first appeared before a court in this case) should weigh against the State, but their views on the particular division of time within this period and the degree of the State's culpability differ. The district court concluded that this whole period weighed against the State because of the multiple unsuccessful attempts during it to arraign Defendant.

**{18}** The State attempted to arraign Defendant on October 30 and again on November 18. During the October arraignment, the State apparently learned that Defendant was incarcerated in Bernalillo County. At the November arraignment, defense counsel expressed its belief that Defendant was incarcerated at that county's Metropolitan Detention Center. The State failed to prepare an order to transport Defendant to either hearing. Although the district court made no finding particular to the timing of Defendant's entry into state custody, the court did find that he was in state custody during at least a portion of this period.

---

1The district court found that Defendant was served in Bernalillo County and that "[t]he return of service does not indicate the place at which the [w]arrant was served." In light of these findings and the absence of any other indicating Defendant's precise location on or before October 2, we do not presume him to have been in state custody—and therefore do not attribute to the State constructive knowledge of his whereabouts under *State v. Urban*, 2004-NMSC-007, ¶ 15, 135 N.M. 279, 87 P.3d 1061—before October 2. Accordingly, our conclusion in relation to the June 15 to October 2 timeframe holds.

**{19}** This is significant because "the [s]tate should be charged with constructive knowledge of the whereabouts of those in its custody." *Urban*, 2004-NMSC-007, ¶ 15. Furthermore, the state's negligent failure to arraign a defendant in state custody weighs against the state in a speedy trial analysis. *Id.*

**{20}** In conclusion, the State's failure to arraign Defendant, including specifically its failure while he was in state custody to transport him to his scheduled arraignments, weighs against the State, which knew or should have known of Defendant's location beginning when he was served with a bench warrant and while he was in state custody. *Compare id.* (weighing moderately against the state its fourteen-month failure, with no reasonable explanation, to serve the defendant who was in state custody with an indictment and arraign him), *with State v. Lopez*, 2009-NMCA-127, ¶ 24, 147 N.M. 364, 223 P.3d 361 (weighing lightly against the state its four-day failure, without a showing of bad faith, to transport the defendant who was in state custody to his arraignment). This approximately two-month period weighs against the State, but given its relatively short duration and the absence of bad faith, only lightly.

**3.      December 4, 2015 to February 10, 2016—Approximately Two Months in Defendant's Favor; February 10, 2016 to June 10, 2016—Four Months of Neutral Delay**

**{21}** We diverge somewhat from the parties' and the district court's division of time for the period from Defendant's arraignment on December 4, 2015 to the June 10, 2016 docket call, conducted in anticipation of the June 29 to 30, 2016 trial setting. The district court found that "[t]he record[] reflect[s] appropriate actions by both the State and [D]efendant" during this period, and it deemed the time administrative delay. Defendant argues that this period should weigh heavily against the State because "[t]he State failed to move the case forward[.]" Meanwhile, the State counters that it did attempt to move the case forward and argues that the time should weigh only lightly against it.

**{22}** The record reveals that the State was moving Defendant's case toward trial during the second, but not first, part of this period. During the first part, from December 4 to February 10, 2016, there is no evidence that the State worked on the case. But on February 10, the State filed a demand for disclosure, a certificate of disclosure, a demand for alibi/entrapment, its witness list, its entry of appearance, and a request for a jury trial setting. On March 10, 2016, the State then filed a second such request. On April 20, the State filed a motion to determine or appoint counsel, and on April 28, filed a request for a hearing on that motion. There is additional evidence that the State was preparing for trial; at the June 10, 2016 docket call, the State reported that witness interviews had been conducted. Overall, the record supports the district court's finding that the State was taking appropriate action in the case from February 10 to June 10.

**{23}** Based on this evidence, the delay from December 4 to February 10, 2016, was caused by the State's negligence in moving the case forward, but the delay from February 10 to June 10, 2016, was caused by the State's preparation for trial. Thus, approximately two months of this period weigh against the State. *See Suskiewich*,

2016-NMCA-004, ¶ 9 (stating that negligent or administrative delay weighs against the state, but not heavily). The remainder of approximately four months weighs neutrally. *See State v. Steinmetz*, 2014-NMCA-070, ¶¶ 12-13, 327 P.3d 1145 (rejecting the district court's conclusion that the period in which the state was actively preparing for trial weighed against it); *State v. Moreno*, 2010-NMCA-044, ¶ 13, 148 N.M. 253, 233 P.3d 782 (concluding that the delay when a case proceeds with customary promptness weighs neutrally).

**4.      June 10, 2016 to June 29, 2016—Approximately Three Weeks of Neutral Delay; June 29, 2016 to September 19, 2016—Approximately Three Months in Defendant's Favor**

**{24}**    We also diverge somewhat from the parties' and the district court's division of time for the period from June 10 to September 19, 2016. Defendant argues that the whole period should weigh heavily against the State. The State treats this timeframe as two periods divided by August 31, 2016, and argues that the first part should weigh neutrally and the second, against Defendant. The district court, meanwhile, essentially divided the period as the State did, but concluded that the entire period constituted "reasonable administrative" delay.

**{25}**    At the June 10, 2016 docket call, the State requested a continuance. The State reported that the defense had requested other witness interviews and that the interviews had not yet been conducted; consequently, the State said, it was not ready for the trial scheduled for later that month. Over Defendant's opposition, the district court granted the continuance. In response, the defense said it would move for dismissal on speedy trial grounds.

**{26}**    The period from June 10 to June 29, 2016, should not weigh against the State as Defendant implicitly contends. Had the district court not granted the continuance and had the trial occurred as scheduled on June 29 and 30, the June 10 to 29 period would essentially be a continuation of the previous one, in which the State was moving the case toward trial and the delay weighed neutrally. The State's indication on August 31, 2016, that it was ready for trial implies that the State indeed made such preparations at some point between June 10 and August 31; for the purposes of our analysis, we will assume that this preparation occurred between June 10 and 29.

**{27}**    More accurately, the delay caused by the State's failure to ready itself for trial is represented by the period beginning with the originally scheduled trial date, June 29, 2016, and ending with the rescheduled date, September 19, 2016. Generally this delay would weigh against the State, but the State contends otherwise. It argues that the delay from August 31 to September 19 should weigh against Defendant because it was he who, by his speedy trial motion, caused it. We disagree, because the State is ultimately to blame for the delay: Defendant would not have made the speedy trial motion had the trial occurred as originally scheduled, and it was the State that prevented that result. The delay from June 29 to September 19, then, is a combination

of negligent delay, caused by the State through its failure to ready itself by June 29, and administrative delay, caused by the court's inability to reset the trial for any earlier date.

**{28}** Given these facts, we divide this timeframe into two periods: one from June 10 to 29, and one from June 29 to September 19. The first weighs neutrally as delay that, for our purposes, was caused by the parties' preparation for trial (even though that preparation might actually have occurred later in the period). The second portion constitutes negligent or administrative delay and weighs moderately against the State. *See Suskiewich*, 2016-NMCA-004, ¶ 9.

### 5. September 19, 2016 to March 24, 2017—Approximately Six Months in Defendant's Favor

**{29}** Despite plans to go to trial on September 19, 2016, the district court vacated that trial setting because, due partly to the court's full docket, it would have been impossible before trial to (1) give the State the time needed, and afforded by rule, to respond to Defendant's speedy trial motion; and (2) conduct a hearing on the motion, which the defense said would include testimony on prejudice. The court scheduled, in place of the vacated trial, a hearing on the motion. The September 19 hearing took place, and the court denied the motion. The parties ultimately went to trial on March 24, 2017.

**{30}** The State characterizes the whole period from September 19, 2016 to March 24, 2017, as administrative delay, and—without explaining its reasoning—argues that the delay should weigh "only slightly" against it. Defendant, by contrast, treats the timeframe as two periods divided by February 22, the date the court scheduled the third trial setting. He argues that the first part should weigh heavily against the State and the second, neutrally. Defendant offers no reason to support his assertion of "heavily," and he reasons that the second part should weigh neutrally because the trial setting was maintained; he likewise does not cite any authority for that proposition.

**{31}** The record reveals the following events related to the case's progression from September 19, 2016 to March 24, 2017. On September 21, 2016, the district court issued its order denying Defendant's speedy trial motion. On September 30, the State requested the third trial setting. On November 29, Defendant moved for reconsideration of his conditions of release, and on December 16, the court heard the motion. The State then requested a hearing to address Defendant's conditions of release; that hearing was scheduled for January 6, 2017, but apparently never occurred. On February 22, the court scheduled a docket call for March 10 (which was subsequently rescheduled for March 22) and scheduled trial for March 24.

**{32}** This September 19 to March 24 period reflects delay caused by both parties. As noted, the State was ready for trial as of August 31, 2016. Presumably, Defendant would have been tried in September had he filed his speedy trial motion sooner. Were he tried then, there would be no post-September 19 delay in the case. Nevertheless, the time it took for the court to schedule the third trial setting—from the State's September 30 request to February 22—is somewhat extraordinary and tends to offset any blame

attributable to Defendant. On balance, this approximately six-month period represents negligent and administrative delay and therefore weighs against the State. *See Suskiewich*, 2016-NMCA-004, ¶ 9.

### 6. The Second *Barker* Factor Weighs Against the State

**{33}** Altogether, the reasons for the total delay in Defendant's case of over twenty-one months—from June 15, 2015 to March 24, 2017—weigh against the State. In all, approximately eight months (representing the periods from June 15 to October 2, 2015, and from February 10 to June 29, 2016) weigh neutrally. None of the total delay is attributed to Defendant; therefore, approximately thirteen months in all weigh against the State. Of that total, approximately two months (representing the period from October 2 to December 4, 2015) weigh lightly against the State. The remaining approximately eleven months (representing the periods from December 4, 2015 to February 10, 2016, and from June 29, 2016 to March 24, 2017) weigh moderately against the State. Overall, this *Barker* factor weighs against the State. *Compare State v. Gallegos*, 2016-NMCA-076, ¶ 34, 387 P.3d 296 (declining to weigh over fourteen months of negligent and administrative delay in a simple case "heavily" against the state), *with State v. Wilson*, 2010-NMCA-018, ¶¶ 44, 50, 147 N.M. 706, 228 P.3d 490 (weighing the second *Barker* factor lightly against the state where eleven months of the delay weighed lightly against the state).

### C. Defendant's Assertion of His Right to a Speedy Trial Weighs Heavily Against the State

**{34}** The parties agree that the assertion of the right factor weighs heavily in Defendant's favor. The district court found at the speedy trial hearing—that is, before Defendant had made all assertions of his speedy trial right—that the factor weighed in Defendant's favor. Under this factor, we consider the timing, manner, frequency, and force relative to a defendant's assertion of the right to a speedy trial. *Spearman*, 2012-NMSC-023, ¶ 31.

**{35}** Defendant asserted his right to a speedy trial once pro forma, orally in court three times, and twice through motions to dismiss. He made his pro forma assertion in writing on September 2, 2015. He made his oral assertions at his arraignment and at the two docket calls: one before the first trial setting and one before the second. At the first docket call on June 10, 2016, he opposed the continuance on speedy trial grounds. He then filed his motion to dismiss on speedy trial grounds on August 30, 2016. Lastly, Defendant again orally asserted his right on March 22, 2017, two days before trial, and again moved to dismiss on speedy trial grounds a second time on the day of trial. In all, Defendant asserted his right six times and with varying degrees of strength. We agree with the parties that this third *Barker* factor weighs heavily in Defendant's favor and against the State. *Cf. Flores*, 2015-NMCA-081, ¶ 32 (weighing the assertion of the right factor heavily in the defendant's favor when he asserted his right at least four times, including in two motions to dismiss).

**D.      The Prejudice to Defendant Caused by the Delay in Bringing Him to Trial Weighs Very Lightly Against the State**

**{36}**    The parties disagree on the degree of prejudice Defendant suffered during the delay in bringing him to trial and on the length of that delay. Defendant argues he was prejudiced by having been incarcerated for nearly eighteen months. The State says variously that his incarceration in this case was about sixteen months and that it was over eighteen months; it also argues that Defendant suffered no undue prejudice from his incarceration. The general uncertainty about the length of incarceration stems from the possibility, according to the district court, of Defendant's having been held in a different case before his incarceration in this case. Nevertheless, the court found that Defendant was incarcerated in this case beginning either October 2, 2015 or November 12, 2015. In any event, we need not resolve this matter, because the one-month, ten-day difference is not significant enough, under the facts of this case, to affect our analysis of this issue. We do note that the court found at the September 19 hearing that Defendant had suffered "the ordinary kinds of anxiety, anxiousness, nervousness and disruption that is attendant to any pending criminal case and incarceration."

**{37}**    Under this factor, we generally consider three interests of the accused potentially affected by the failure to bring a case to trial: (1) avoiding oppressive pretrial incarceration; (2) minimizing personal anxiety and concern; and (3) limiting the possibility of an impaired defense. *Serros*, 2016-NMSC-008, ¶ 84. As to the first two interests, "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. Therefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citations omitted). As to the first interest, "[t]he oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id.* Notably, a defendant need not submit evidence of prejudice from incarceration for a court to find prejudice; rather, it can be inferred from continuous, lengthy incarceration. *See State v. Ochoa*, 2017-NMSC-031, ¶ 57, 406 P.3d 505 (presuming some prejudice by reason only of the defendant's two-year, continuous incarceration).

**{38}**    Of these interests, Defendant cites only the first as having been affected. Specifically, he argues that his pretrial incarceration, by virtue of its length alone—that is, not for any particularized reason—prejudiced him. While under *Ochoa* he need not show particularized prejudice for this factor to weigh in his favor, his failure to do so weakens his claim. *See id.* ¶ 65. In any case, we consider the fact that Defendant was continuously incarcerated in this case for about sixteen or eighteen months. That is about six or eight months less than the defendant in *Ochoa*, for whom the Court presumed some prejudice, even—like here—in the absence of a particularized showing. *See id.* ¶ 64. We thus recognize some prejudice from Defendant's incarceration, but, as in Ochoa, the absence of a particularized showing of prejudice prevents us from "weigh[ing] this factor more strongly in his favor." *Id.* ¶ 64. This fourth *Barker* factor, then, weighs very lightly in Defendant's favor and against the State.

**E. On Balance, the *Barker* Factors' Weight Against the State Does Not Amount to a Speedy Trial Violation**

**{39}** We have established that the first *Barker* factor weighs somewhat heavily against the State, the second, moderately against the State, the third, heavily against the State, and the fourth, very lightly against the State. Although these determinations are adverse to the State, that adversity does not establish a violation of Defendant's speedy trial right. That is because, without a showing of particularized prejudice, a defendant's speedy trial right is violated only if the first three *Barker* factors weigh heavily against the state. *Garza*, 2009-NMSC-038, ¶ 39. Here, only one of those factors weighs heavily against the State. We conclude, therefore, that Defendant's speedy trial right was not violated.

**II. The State Presented Sufficient Evidence to Support Defendant's Convictions**

**{40}** We next address whether the State presented sufficient evidence at trial to support Defendant's convictions.

**{41}** When reviewing a sufficiency of the evidence claim, we consider "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). On review, we "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict[,]" *id.* ¶ 52, and disregard all evidence and inferences that support a different result, *see State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "The question before [us] . . . is not whether [we] would have had a reasonable doubt about guilt but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *Montoya*, 2015-NMSC-010, ¶ 52 (alteration, internal quotation marks, and citation omitted). Lastly, we note that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (alteration, internal quotation marks, and citation omitted).

**{42}** We thus measure the sufficiency of the evidence against the jury instructions used at Defendant's trial. *See id.* Each instruction corresponding to Defendant's convictions for burglary read materially as follows:

> For you to find [D]efendant guilty of burglary as charged in Count [1; 5; 6; 7; 9], the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [D]efendant entered a vehicle without authorization;

2. [D]efendant entered the vehicle with the intent to commit a theft when inside;

3. This happened in New Mexico on or about [January 21, 2015 for Count 1; March 22, 2015 for Counts 5 and 6; March 28, 2015 for Count 7 and 9].

Each jury instruction corresponding to Defendant's convictions for larceny read materially as follows:

For you to find [D]efendant guilty of larceny as charged in Count [2; 8; 10], the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant took and carried away [U.S. Currency and a Gift Certificate for Count 2; a knife and U.S. Currency for Count 8; a diaper bag, a wallet, miscellaneous personal cards and a check book for Count 10], belonging to another;

2. At the time he took this property, [Defendant] intended to permanently deprive the owner of it;

3. This happened in New Mexico on or about [January 21, 2015 for Count 2; March 28, 2015 for Counts 8 and 10].

**{43}** We must consider whether there was substantial evidence to support each of these elements. The State's evidence consisted partly of witness testimony. Specifically, several victims testified to having had their vehicles broken into and belongings stolen. They identified the incidents' dates and locations, the vehicles burglarized, and the items stolen; they also testified to having reported the incidents to police.

**{44}** Two Ruidoso police officers also testified. They were Detectives Merritt and Bryant, who were investigating those victims' reports and who interviewed Defendant when he came into police custody on May 7, 2015. Detective Merritt said that Defendant admitted during the interview that he had, without authorization, gone into various unlocked cars in the Grindstone Canyon area and removed various items from them. Detective Merritt described what happened next: Defendant agreed to go with him in a police car through the area to point out the specific properties where the cars he had broken into were parked. Defendant and both detectives took that ride, and the conversation during it was recorded. A portion of the recording was played during trial.

**{45}** Notably, Defendant does not dispute that there was sufficient evidence to prove that the burglaries and larcenies he was convicted of occurred; rather, he argues that the evidence fell short in proving beyond a reasonable doubt that he was the person who committed them. Specifically, he highlights details of his admissions and points out

their incongruence with the details of his convictions. He also points out that the State collected no physical evidence and recovered none of the stolen items in such a way as to link the thefts to him.

**{46}** In making these points, Defendant focuses on two types of evidence: (1) that which was presented at trial and which undermines the jury's findings; and (2) that which would support the jury's findings, but was not presented. Concerning the first, we disregard that evidence, as it supports acquittal. *See Rojo*, 1999-NMSC-001, ¶ 19. Concerning the second, the test for sufficiency is not whether the State presented some particular piece of evidence that would bolster the findings of guilt, but rather whether the evidence the State did present was sufficient to support the findings. *See Montoya*, 2015-NMSC-010, ¶ 52.

**{47}** A review of the evidence shows that, as substantial evidence, it meets our standard on review. *See id.* To begin with, Detective Merritt testified that Defendant admitted that he had gone into other people's unlocked cars in the Grindstone Canyon area to steal. The truth of that admission is reinforced by the undisputed fact that Defendant rode with the detectives through that area for the purpose of identifying the specific residences where he acted. In other words, the evidence plainly established that Defendant generally committed burglaries and larcenies in the area. Defendant's admissions thus established the first and second elements of the burglary convictions (entering vehicles without authorization and with the intent to commit theft when inside) and the second part of the second element of the larceny convictions (intent to permanently deprive the owner of the stolen property). Defendant's having committed the particular burglaries and larcenies charged—as defined by the three dates in the jury instructions—was established as explained below.

**{48}** Regarding Defendant's convictions for one count of burglary and one count of larceny on January 21, 2015: While passing 113 Drooping Juniper during the drive, Defendant said that he tried to open the door of a "little blue car, something like that" looking for cash. At trial, Detective Bryant testified that there were similarities between Defendant's statements about his activity at 113 Drooping Juniper and the incident reported there. The victim of the break-in at that address, Kim Smith, testified that her Toyota Scion was broken into on January 21, 2015, at her home on 113 Drooping Juniper, and that her proof of vehicle registration and insurance, health cards, some cash, and a gift certificate were taken from the car. Together, these statements suggest a strong correlation between the crimes at 113 Drooping Juniper and Defendant's activity there.

**{49}** Regarding Defendant's convictions for two counts of burglary on March 22, 2015: While passing 313 Spring Road, Defendant said that he thought he tried to open the door of a Chrysler 300. Michael Clements testified that his Chrysler 300 and Explorer were broken into on March 22, 2015, at 313 Spring Road. Together, these statements suggest a strong correlation between the burglaries at 313 Spring Road and Defendant's activity there.

**{50}** Regarding Defendant's convictions for two counts of burglary and two counts of larceny on March 28, 2015: While driving on Clover Drive, Defendant pointed to a specific house, said he thought he was there, and referenced a truck and a book bag. At trial, Detective Bryant testified that Defendant's statements corresponded to the reports of break-ins at that address. One victim of the break-ins, Kalyn Hall, testified that her Jeep was broken into on March 28, 2015, at her home on 105 Clover and that a diaper bag and wallet were taken from the Jeep. Her husband, Dayne Hall, testified that his Chevy truck was broken into on that same day and at the same address and that some cash and a knife were stolen from the truck. The testimony of these witnesses suggests a strong correlation between the crimes at 105 Clover Drive and Defendant's activity there.

**{51}** Considered together, the victims' testimony established the particular date in each conviction's third element and the particular items in each larceny conviction's first element. Additional testimony by Detectives Bryant and Merritt connects those elements to the others in each conviction and corroborates the evidence supporting guilt. In particular, Detective Merritt's testimony about the timing of the break-ins Defendant admitted to connects Defendant to the victim-described incidents. That is, Detective Merritt testified that Defendant estimated he had committed the acts "about a month" before the interview, which would account for the late-March break-ins. The jury could have reasonably inferred that Defendant committed the late-January break-in as well; it would have been reasonable to assume that Defendant narrowed the time frame in his admission in an attempt to minimize the span of his criminal conduct. Furthermore, Detective Bryant testified that the police had no other confessions for the January break-in on Drooping Juniper, despite its having been a subject of police investigation.

**{52}** All considered, there was substantial evidence to support a verdict of guilty beyond a reasonable doubt with respect to each element of the crimes Defendant was convicted of. It can be reasonably inferred from Defendant's admissions and the victims' and detectives' testimony, *see Montoya*, 2015-NMSC-010, ¶ 52, that Defendant was the perpetrator of those crimes: Defendant's timing-specific admission to having committed the burglaries and larcenies on specific streets in the Grindstone Canyon area, together with the detectives' testimony about their investigation, establish the first part of the second element of the larceny convictions (related to the thefts' timing) and otherwise connect the elements of each conviction with one another.

## CONCLUSION

**{53}** Having concluded that Defendant's speedy trial right was upheld and that there was sufficient evidence to support his convictions, we affirm.

**{54} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**